******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

AMY SILVER *v.* TREVOR SILVER
(AC 42777)

DiPentima, C. J., and Moll and Harper, Js.*

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court granting the plaintiff's postjudgment motion to "clarify and effectuate" the dissolution judgment. During their marriage, the parties founded E Co. The plaintiff owned 10 percent of its corporate stock and the defendant owned the remaining 90 percent of the corporate stock. In its dissolution judgment, the trial court found that the parties each owned a 50 percent equitable interest in E Co. and ordered, inter alia, that the parties execute a redemption agreement to effectuate the buyout of the plaintiff's 10 percent ownership of E Co.'s corporate stock and a deferred compensation agreement to effectuate the buyout of the plaintiff's remaining 40 percent equitable interest in E Co. In her motion, the plaintiff requested that the court clarify whether it intended to have her receive her 40 percent interest in E Co. tax free, notwithstanding that the dissolution judgment required the parties to execute a deferred compensation agreement to carry out that buyout. She further requested that the court order the defendant to execute certain corporate documents prepared by her counsel, which included a redemption agreement pursuant to which the plaintiff would receive her entire 50 percent interest in E Co. tax free and did not include a deferred compensation agreement. The trial court granted the plaintiff's motion, stating that it was clarifying the terms of the dissolution judgment and that it intended that the plaintiff receive the 40 percent interest of E Co. tax free in the buyout. In addition, the court ordered the defendant to execute the corporate documents prepared by the plaintiff's counsel. *Held* that the defendant could not prevail on his claim that the trial court abused its discretion by opening and modifying the dissolution judgment in granting the plaintiff's motion to "clarify and effectuate" the dissolution judgment when the plaintiff did not request such relief; although, in granting the plaintiff's motion, that court modified, rather than clarified, the dissolution judgment, the court properly exercised its statutory (§ 52-212a) authority to open and modify the judgment because the plaintiff, within four months of the judgment, filed a motion that, despite being titled as a motion to "clarify and effectuate" the dissolution judgment was, in substance, a motion to open and modify the judgment pursuant to § 52-212a, and the defendant was apprised of the relief requested by the plaintiff and that the dissolution judgment would be modified if the court granted her motion.

Argued May 18—officially released September 29, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Diana, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court granted the plaintiff's motion to clarify and issued a clarification of its decision; subsequently, the court issued an order regarding certain tax payments, and the defendant appealed to this court; thereafter, the court issued an order regarding certain corporate documents, and the defendant filed an amended appeal. *Affirmed.*

*Charles D. Ray*, with whom, on the brief, was *Angela M. Healey*, for the appellant (defendant).

*Yakov Pyetranker*, for the appellee (plaintiff).

*Opinion*

MOLL, J. In this dissolution matter, the defendant, Trevor Silver, appeals from the judgment of the trial court granting a postdissolution motion filed by the plaintiff, Amy Silver, seeking to "clarify and effectuate" the judgment of dissolution rendered by the court. On appeal, the defendant claims that the court improperly modified the dissolution judgment in granting the plaintiff's motion. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The parties were married in 2008. In 2012, the parties founded Exusia, Inc. (Exusia), an information technology consulting business.[1] The plaintiff was employed as Exusia's chief financial officer[2] and owned 10 percent of Exusia's corporate stock. The defendant was employed as Exusia's chief executive officer and owned the remaining 90 percent of Exusia's corporate stock.

On October 26, 2016, the plaintiff commenced the present action seeking a dissolution of the parties' marriage on the ground that the marriage had broken down irretrievably. The matter was tried to the court, *Diana, J.*, over the course of several days in October, 2018. Both parties submitted proposed orders and posttrial briefs.

In the plaintiff's proposed orders, with respect to Exusia, the plaintiff requested in relevant part that the court (1) find that, notwithstanding the plaintiff's ownership of 10 percent of Exusia's corporate stock, the plaintiff possessed a 50 percent equitable interest in Exusia, and (2) order the defendant to buy out the plaintiff's 50 percent interest in Exusia. The plaintiff summarized her proposed terms for the division of Exusia as follows: "As and for a lump sum property settlement, the defendant shall buy out the plaintiff's 50 [percent] interest in Exusia. . . . In essence, the defendant shall cause Exusia to redeem the plaintiff's 10 [percent] interest, and he shall buy out the plaintiff's 40 [percent] interest, with both payments made in installments over the next ten (10) years. . . . The 10 [percent] redemption payout shall be taxable to the defendant as a constructive distribution. See 26 C.F.R. § 1.1041-2, Treas. Reg. § 1-1041-2.[3] . . . With respect to the 40 [percent] buyout, the court shall order: that the buyout is a transfer of property to a former spouse incident to the divorce, such that no gain or loss shall be recognized; see I.R.C. § 1041 (a) (2);[4] that the property shall be treated as acquired by the transferee by gift, and that the basis of the transferee in the property shall be the adjusted basis of the transferor; see I.R.C. § 1041 (b);[5] and that the transfer is related to the cessation of the marriage. See I.R.C. § 1041 (c) (2).[6] . . . The court shall order that the plaintiff's buyout entitlement shall be nondischargeable in bankruptcy. . . . The court shall reserve continuing jurisdiction over the buyout

provision above to effectuate and implement the plaintiff's receipt of her 50 [percent] interest." (Footnotes added.) The plaintiff attached to her proposed orders a document setting forth specific terms for her proposed orders regarding Exusia (schedule).

On December 4, 2018, the trial court issued a memorandum of decision rendering a judgment of dissolution. With regard to Exusia, the court found that the parties each owned a 50 percent equitable interest therein and that the fair market value of 100 percent of the equity thereof was $20,000,000. The court then entered the following relevant orders regarding Exusia: "As and for a lump sum property settlement, the defendant shall buy out the plaintiff's 50 percent interest in Exusia.

"The buyout payout structure is set forth as follows: The defendant shall cause Exusia to redeem the plaintiff's 10 percent interest and he shall buy out the plaintiff's 40 percent interest, with both interests paid out as one payment made in installments over the next ten (10) years. The 10 percent redemption payout shall be taxable to the defendant as a constructive distribution. See 26 C.F.R. § 1.1041-2, Treas. Reg. § 1.1041-2.

"With respect to the 40 percent buyout, the court orders: that the buyout is a transfer of property to a former spouse incident to the divorce, such that no gain or loss shall be recognized; see I.R.C. § 1041 (a) (2); that the property shall be treated as acquired by the transferee by gift, and that the basis of the transferee in the property shall be the adjusted basis of the transferor; see I.R.C. § 1041 (b); and that the transfer is related to the cessation of the marriage. See I.R.C. § 1041 (c) (2).

"The court orders that the plaintiff's buyout entitlement shall be nondischargeable in bankruptcy. The court hereby reserves continuing jurisdiction over the buyout provisions above to effectuate and implement the plaintiff's receipt of her 50 percent interest.

"The specific buyout provisions . . . [are as follows]: (i) The defendant shall cause Exusia to redeem, pursuant to a redemption agreement, the plaintiff's 10 percent interest in [Exusia] for the sum of $2,000,000, which shall be paid in quarterly installments of $50,000. The foregoing 10 percent payment shall commence effective March 15, 2019, and continue on the fifteenth of each and every quarter thereafter for a term of ten years.

"(ii) The defendant shall cause Exusia to enter into a deferred compensation agreement . . . with the plaintiff, in the aggregate amount of $8,000,000 minus $957,000,[7] the plaintiff's 40 percent interest in [Exusia]. The first $43,000 shall be payable to the plaintiff immediately upon execution of [certain] corporate documents, as defined [elsewhere in the dissolution judgment]. The remaining $7,000,000 shall be paid to the plaintiff in

equal quarterly installments of $175,000, due on the 15th day of each quarter, for a term of [ten] years ([forty] quarterly payments in total). The first payment is due on March 15, 2019, and shall be paid quarterly as set forth above ([forty] payments of $225,000 for [ten] years). The defendant shall receive a credit in the amount of $675,000 in consideration for the asset/liability division. The final three payments due the plaintiff shall not be paid by the defendant as satisfaction of this credit." (Footnote added.) The foregoing orders substantively paralleled the terms in the plaintiff's proposed orders and in the schedule attached thereto.[8] Neither party appealed from the dissolution judgment.

On January 15, 2019, the plaintiff filed a postdissolution motion to "clarify and effectuate" the judgment of dissolution (January 15, 2019 motion). She requested that the court issue a "clarification" explaining whether it "intend[ed] that [she] receive her 40 [percent] share of Exusia tax free in the buyout, irrespective of the specific method of corporate documents implemented to further this intent . . . . That is, did the court intend that [she] receive her 40 [percent] share of Exusia tax free in the buyout, regardless of references in the [dissolution] judgment to specific corporate documents, e.g., 'deferred compensation agreement'?" The plaintiff maintained that the court intended for her to receive her entire 50 percent interest in Exusia tax free, notwithstanding that the dissolution judgment ordered that 40 percent of her interest would be paid to her by way of a deferred compensation agreement, which would result in the plaintiff bearing a tax burden.[9] The plaintiff represented that her corporate counsel had drafted a redemption agreement pursuant to which the plaintiff would receive her entire 50 percent interest in Exusia tax free but that the defendant's corporate counsel refused to sign the agreement because it allegedly did not comport with the terms of the dissolution judgment. As relief, the plaintiff requested that the court (1) clarify the dissolution judgment with regard to the division of Exusia, and (2) order the defendant to execute the corporate documents prepared by her corporate counsel, which included the redemption agreement.

On January 28, 2019, the defendant, in a combined document, filed (1) a response to the plaintiff's January 15, 2019 motion and (2) a motion to clarify, requesting that the court "clarify its memorandum of decision . . . to provide that the buyout payment due to the [plaintiff] be tax deductible to Exusia as deferred compensation." The defendant asserted that the court adopted the plaintiff's proposal that 40 percent of her interest in Exusia be remitted to her by way of a deferred compensation agreement, which would result in Exusia's payment thereof to the plaintiff being tax deductible to Exusia and taxable to the plaintiff. The defendant contended that the plaintiff was seeking to change the terms of the judgment of dissolution to shift the tax burden to

the defendant, which would disturb the equal division of the parties' property. As relief, the defendant requested that the court clarify that the payment of the plaintiff's 40 percent interest in Exusia under the deferred compensation agreement would be tax deductible to Exusia.[10]

On January 30, 2019, the plaintiff filed a reply brief. She contended that the court's orders regarding Exusia constituted property assignments that were intended to be tax free to her. She conceded that a deferred compensation agreement was not the proper mechanism to effectuate the buyout of her 40 percent interest in Exusia; however, she maintained that the court intended to award her entire 50 interest in Exusia to her tax free and that the court's reference to a deferred compensation agreement in the judgment of dissolution was not a substantive term thereof.

On January 31, 2019, without holding a hearing, the court granted the plaintiff's January 15, 2019 motion, stating that it was "clarif[ying]" the terms of the judgment of dissolution as follows: "The court intended that the plaintiff receive her 40 [percent] share of Exusia tax free in the buyout, irrespective of references in the judgment of the specific corporate documents used. . . . The defendant shall execute the plaintiff's corporate documents . . . including her redemption agreement, as drafted by the plaintiff's corporate counsel."

On February 19, 2019, the defendant filed a motion to reargue, asserting that (1) the corporate documents prepared by the plaintiff's corporate counsel that the court ordered the parties to execute contained terms that were inconsistent with the judgment of dissolution, and (2) the court's determination that the plaintiff was to receive 40 percent of her interest in Exusia tax free disturbed the equitable division of the parties' assets in the judgment of dissolution. As relief, the defendant requested, inter alia, that the court hear argument on the issue of whether the buyout of the plaintiff's 40 percent interest in Exusia was tax free to the plaintiff and order the parties to execute revised corporate documents prepared by the defendant's corporate counsel. On February 22, 2019, the plaintiff filed an objection to the defendant's motion to reargue.

On March 18, 2019, the court granted the defendant's motion to reargue but, following a hearing, the court denied the defendant's requested relief without prejudice. The same day, the court issued a separate order providing in relevant part that "[t]he plaintiff shall pay no taxes on the money she receives as a result of the redemption agreement." In addition, the court continued the matter to April 24, 2019, when it would address compliance with its order and any "unresolved issues" raised in the defendant's motion to reargue. This appeal, challenging the court's granting of the plaintiff's January 15, 2019 motion and its March 18, 2019 order, followed.

On April 24, 2019, following a hearing, the court issued an order providing in relevant part that certain language proposed by the plaintiff to insert into the corporate documents prepared by her corporate counsel was approved and that the corporate documents were to be revised accordingly. Thereafter, the defendant amended this appeal to encompass the April 24, 2019 order.[11] Additional facts and procedural history will be set forth as necessary.

On appeal, the defendant claims that the court's granting of the plaintiff's January 15, 2019 motion resulted in a modification, rather than a clarification, of the judgment of dissolution. Specifically, he asserts that the court substantively altered the dissolution judgment's provision requiring the parties to execute a deferred compensation agreement to effectuate the buyout of the plaintiff's 40 percent interest in Exusia by ruling that the plaintiff was to receive said interest tax free and ordering the parties to execute the corporate documents prepared by the plaintiff's corporate counsel, which did not include a deferred compensation agreement among them. The defendant contends that, as a result of the court's modification of the dissolution judgment, his tax burden has been increased whereas the plaintiff's tax burden has been eliminated. The plaintiff argues that the court's granting of the January 15, 2019 motion clarified the dissolution judgment to make clear the court's purported intent to have the plaintiff receive her entire 50 percent interest in Exusia tax free.[12] We agree with the defendant that the court modified, rather than clarified, the judgment of dissolution.

To determine whether the court's granting of the plaintiff's January 15, 2019 motion modified or clarified the judgment of dissolution, "we must first construe the trial court's judgment. It is well established that the construction of a judgment presents a question of law over which we exercise plenary review. . . . In construing a trial court's judgment, [t]he determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Almeida* v. *Almeida*, 190 Conn. App. 760, 766, 213 A.3d 28 (2019).

"In order to determine the substance of the trial court's actions here, we begin by examining the definitions of both alteration and clarification. An alteration is defined as '[a] change of a thing from one form or state to another; making a thing different from what it was without destroying its identity.' Black's Law Dictionary (4th Ed. 1968). 'An alteration is an act done upon the instrument by which its meaning or language

is changed. If what is written upon or erased from the instrument has no tendency to produce this result, or to mislead any person, it is not an alteration.' Id. Similarly, a modification is defined as '[a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact.' Black's Law Dictionary (6th Ed. 1990).

"Conversely, to clarify something means to 'free it from confusion.' Webster's New World Dictionary of the American Language (2d Ed. 1972). Thus, the purpose of a clarification is to take a prior statement, decision or order and make it easier to understand." *In re Haley B.*, 262 Conn. 406, 413, 815 A.2d 113 (2003).

Applying the foregoing principles to the present case, we conclude that the court's granting of the plaintiff's January 15, 2019 motion resulted in a modification, rather than a clarification, of the judgment of dissolution. In the dissolution judgment, the court ordered, as expressly requested by the plaintiff in her proposed orders, that the parties execute (1) a redemption agreement to effectuate the buyout of the plaintiff's 10 percent ownership of Exusia corporate stock and (2) a deferred compensation agreement to effectuate the buyout of the plaintiff's remaining 40 percent equitable interest in Exusia. In granting the plaintiff's January 15, 2019 motion, the court removed the requirement that the parties execute a deferred compensation agreement and, in lieu thereof, required the parties to execute a redemption agreement to effectuate the buyout of the plaintiff's entire 50 percent interest in Exusia. In effect, the court cancelled an original element of the dissolution judgment (the deferred compensation agreement) and added a new element in its place (the expanded redemption agreement). Accordingly, the court's order constituted a modification of the dissolution judgment.

Our conclusion that the court modified, rather than clarified, the judgment of dissolution does not end our inquiry. The plaintiff argues that, if the court's ruling constituted a modification of the dissolution judgment, then the court properly exercised its authority to open and modify the judgment within four months thereof. See General Statutes § 52-212a.[13] The defendant does not contend that the dissolution judgment was not subject to being opened and modified within four months pursuant to § 52-212a. Instead, the defendant contends that the plaintiff did not file a motion to *open and modify* the dissolution judgment but, rather, filed a motion to *clarify* the judgment. We distill the defendant's claim to be that the court abused its discretion by opening and modifying the dissolution judgment in granting the plaintiff's January 15, 2019 motion when the plaintiff did not request such relief.[14] See *Von Kohorn* v. *Von Kohorn*, 132 Conn. App. 709, 711, 716, 33 A.3d 809 (2011) (applying abuse of discretion stan-

dard to defendant's claim that trial court improperly modified judgment of dissolution in response to plaintiff's postdissolution " 'motion to reargue and for clarification' " when plaintiff did not seek such relief). We agree with the plaintiff and reject the defendant's contention that the court abused its discretion.

"An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) Id., 713.

We first observe that the orders in the judgment of dissolution regarding the division of Exusia were issued pursuant to the court's authority to assign property in a dissolution action under General Statutes § 46b-81.[15] "The Superior Court has jurisdiction to assign property in connection with a dissolution of marriage action, in accordance with § 46b-81, but unlike periodic alimony or child support, which usually are modifiable, the assignment of property is nonmodifiable." *Taylor* v. *Taylor*, 57 Conn. App. 528, 533, 752 A.2d 1113 (2000). That is not to say that a property assignment is never subject to modification. Pursuant to § 52-212a, a court may open and modify a property assignment in acting on a motion seeking such relief filed within four months of the judgment. See *Passamano* v. *Passamano*, 228 Conn. 85, 89 n.4, 634 A.2d 891 (1993) ("a property division order generally cannot be modified by the trial court after the dissolution decree is entered, *subject only to being opened within four months from the date the judgment is rendered under . . . § 52-212a*" (emphasis added)); *Fitzsimons* v. *Fitzsimons*, 116 Conn. App. 449, 454–55, 975 A.2d 729 (2009) (concluding that, pursuant to § 52-212a, trial court was vested with discretion to modify property assignment in granting motion seeking modification filed within six days of dissolution judgment).

In the present case, the plaintiff's January 15, 2019 motion, filed within four months of the judgment of dissolution, was titled as a motion to "clarify and effectuate" the dissolution judgment. "A motion for clarification may be appropriate where there is an ambiguous term in a judgment . . . but, where the movant's request would cause a substantive modification of an existing judgment, a motion to open or set aside the judgment would normally be necessary." (Citation omit-

ted.) *Rome* v. *Album*, 73 Conn. App. 103, 109, 807 A.2d 1017 (2002). The nature of a motion, however, is not determined by its title alone. "A court has broad discretion to treat a motion for clarification of a judgment or a motion to reargue a judgment as a motion to open and modify the judgment provided that the motion is filed within the four month period [set forth in § 52-212a] and the substance of the motion and the relief requested therein is sufficient to apprise the nonmovant of the purpose of the motion." *Von Kohorn* v. *Von Kohorn*, supra, 132 Conn. App. 714–15. Moreover, we are not bound by the characterizations of a motion by the movant or by the trial court. See, e.g., *In re Haley B.*, supra, 262 Conn. 412–13 ("[D]espite the [movant] or the trial court's characterization of the motion, we examine the practical effect of the trial court's ruling in order to determine its nature. . . . Put differently, even though the [movant's] motion was labeled by the trial court as a motion for clarification, we look to the substance of the relief sought by the motion rather than the form." (Citation omitted.)); *Fewtrell* v. *Fewtrell*, 87 Conn. App. 526, 532, 865 A.2d 1240 (2005) ("Although the [movant] herself characterized her . . . pleading as a 'Motion to Modify,' and the [trial] court, in its responsive ruling, utilized language indicating acquiescence to that characterization, neither of these factors influences the actual nature of the motion or the court's responsive ruling. It has been recognized by both this court and our Supreme Court that despite the movant's or the trial court's characterization of a motion, a reviewing court examines the practical effect of the responsive ruling in determining the nature of the pleading. . . . On review, we look to the substance of the relief sought by the motion and the practical effect of the trial court's responsive ruling." (Citations omitted.)).

In the January 15, 2019 motion, the plaintiff asked the trial court to "clarify" the judgment of dissolution by articulating whether the court intended to have her receive her 40 percent interest in Exusia tax free notwithstanding that the dissolution judgment required the parties to execute a deferred compensation agreement to carry out the buyout thereof. In addition, the plaintiff asked the court to order the parties to execute the corporate documents prepared by her corporate counsel. The corporate documents did not include a deferred compensation agreement among them; instead, in addition to other documents, the plaintiff's corporate counsel drafted a redemption agreement that governed the transfer of the plaintiff's entire 50 percent interest in Exusia to the plaintiff. Notwithstanding the plaintiff's use of the term "clarify" in the January 15, 2019 motion, the plaintiff, in essence, was requesting that the court modify a substantive term of the dissolution judgment by eliminating the requirement that the parties execute a deferred compensation agreement with respect to the

buyout of the plaintiff's 40 percent interest in Exusia and, in lieu thereof, ordering the parties to use a different vehicle—a redemption agreement—to effectuate the transfer of the plaintiff's entire 50 percent interest in Exusia to her. As we concluded earlier in this opinion, the effect of the court's granting of the January 15, 2019 motion was a modification of the dissolution judgment. Thus, we construe the January 15, 2019 motion as having sought to open and to modify, rather than to clarify, the dissolution judgment.

Additionally, it is evident that the defendant was aware that the plaintiff's January 15, 2019 motion was requesting that the court open and modify the judgment of dissolution. In his January 28, 2019 filing, in part, responding to the January 15, 2019 motion, the defendant argued that the corporate documents prepared by the plaintiff's counsel ran "directly contrary to the [dissolution judgment]. The [plaintiff] propose[s] to do away altogether with the court's order that the buyout be structured as a redemption agreement for the plaintiff's [10] percent interest and a [deferred compensation agreement] for her remaining 40 percent equitable interest. Instead, the [plaintiff's corporate] counsel simply drafted a single redemption agreement that would require Exusia to pay the entire 50 percent buyout amount . . . in exchange for the plaintiff's 10 [percent] of [Exusia's] shares. This is not what the [plaintiff] proposed, it is not what the [defendant] proposed, and it is not what the court ordered or intended." (Footnote omitted.) These statements demonstrate that the defendant was apprised that the dissolution judgment would be modified if the court granted the January 15, 2019 motion. See *Fitzsimons* v. *Fitzsimons*, supra, 116 Conn. App. 455 n.5 (construing plaintiff's motion to reargue as motion to open and modify judgment of dissolution when, on basis of substance of motion and transcript of hearing thereon, defendant had notice of relief requested by plaintiff and defendant did not claim prejudice); cf. *Von Kohorn* v. *Von Kohorn*, supra, 132 Conn. App. 715–16 (concluding that trial court, in granting plaintiff's postdissolution "motion to reargue and for clarification," improperly modified dissolution judgment by changing lifetime alimony award to eight year alimony award when plaintiff did not request such relief in motion and defendant was not apprised that such relief was requested).[16]

In sum, within four months of the judgment of dissolution, the plaintiff filed a motion that, although titled as a motion to "clarify and effectuate" the judgment of dissolution, was, in substance, a motion to open and modify the judgment pursuant to § 52-212a. The defendant was apprised of the relief requested by the plaintiff. Accordingly, we reject the defendant's claim that the court erred by modifying the dissolution judgment in granting the plaintiff's January 15, 2019 motion.[17]

The judgment is affirmed.

In this opinion the other judges concurred.

\* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Exusia is an S corporation. "An S corporation is a corporation with no more than 100 shareholders that passes through net income or losses to those shareholders in accordance with Internal Revenue Code, Chapter 1, Subchapter S." *R.D. Clark & Sons*, *Inc.* v. *Clark*, 194 Conn. App. 690, 702 n.10, 222 A.3d 515 (2019).

[2] The plaintiff's employment at Exusia was terminated in January, 2018.

[3] Title 26 of the Code of Federal Regulations, § 1.1041-2, provides in relevant part: "[(a) (1)] Notwithstanding Q&A-9 of [26 C.F.R.] § 1.1041-1T (c), if a corporation redeems stock owned by a spouse or former spouse (transferor spouse), and the transferor spouse's receipt of property in respect of such redeemed stock is not treated, under applicable tax law, as resulting in a constructive distribution to the other spouse or former spouse (nontransferor spouse), then the form of the stock redemption shall be respected for Federal income tax purposes. Therefore, the transferor spouse will be treated as having received a distribution from the corporation in redemption of stock.

"(2) . . . Notwithstanding Q&A-9 of § 1.1041-1T (c), if a corporation redeems stock owned by a transferor spouse, and the transferor spouse's receipt of property in respect of such redeemed stock is treated, under applicable tax law, as resulting in a constructive distribution to the nontransferor spouse, then the redeemed stock shall be deemed first to be transferred by the transferor spouse to the nontransferor spouse and then to be transferred by the nontransferor spouse to the redeeming corporation. Any property actually received by the transferor spouse from the redeeming corporation in respect of the redeemed stock shall be deemed first to be transferred by the corporation to the nontransferor spouse in redemption of such spouse's stock and then to be transferred by the nontransferor spouse to the transferor spouse.

"[(b) (1)] Section 1041 [of title 26 of the United States Code] will not apply to any of the transfers described in paragraph (a) (1) of this section. . . .

"(2) . . . The tax consequences of each deemed transfer described in paragraph (a) (2) of this section are determined under applicable provisions of the Internal Revenue Code as if the spouses had actually made such transfers. Accordingly, section 1041 applies to any deemed transfer of the stock and redemption proceeds between the transferor spouse and the nontransferor spouse, provided the requirements of section 1041 are otherwise satisfied with respect to such deemed transfer. Section 1041, however, will not apply to any deemed transfer of stock by the nontransferor spouse to the redeeming corporation in exchange for the redemption proceeds. . . ."

[4] Title 26 of the United States Code, § 1041 (a), provides: "No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of)—

"(1) a spouse, or

"(2) a former spouse, but only if the transfer is incident to the divorce."

[5] Title 26 of the United States Code, § 1041 (b), provides: "In the case of any transfer of property described in subsection (a) [of 26 U.S.C. § 1041]—

"(1) for purposes of this subtitle, the property shall be treated as acquired by the transferee by gift, and

"(2) the basis of the transferee in the property shall be the adjusted basis of the transferor."

[6] Title 26 of the United States Code, § 1041 (c), provides: "For purposes of subsection (a) (2) [of 26 U.S.C. § 1041], a transfer of property is incident to the divorce if such transfer—

"(1) occurs within 1 year after the date on which the marriage ceases, or

"(2) is related to the cessation of the marriage."

[7] On August 10, 2018, the court, *Shay*, *J.*, found the plaintiff in contempt for withdrawing funds from a business account without the defendant's written consent or a court order. The court stated that it would give "some consideration" to the plaintiff's unauthorized withdrawal, in addition to the statutory factors set forth in General Statutes § 46b-81, in rendering the judgment of dissolution. In the memorandum of decision dissolving the parties' marriage, the court, *Diana*, *J.*, subtracted $957,000—the sum of funds improperly withdrawn by the plaintiff—from the amount owed to the plaintiff for her 40 percent interest in Exusia.

[8] The schedule provided in relevant part: "(1) The defendant shall cause

Exusia to redeem, pursuant to a [r]edemption [a]greement, the plaintiff's 10 [percent] interest in [Exusia] for the sum of $3,320,000 [predicated on the plaintiff's valuation of Exusia], which shall be paid in equal monthly installments of $27,666.66. The foregoing 10 [percent] payment shall commence effective January 1, 2019, and continue on the first day of each and every month thereafter.

"(2) The defendant shall cause Exusia to enter into a [d]eferred [c]ompensation [a]greement . . . with the plaintiff, in the aggregate amount of $13,280,000 [predicated on the plaintiff's valuation of Exusia], the plaintiff's 40 [percent] interest in [Exusia]. The first $280,000 shall be payable to the plaintiff immediately upon execution of [certain] [c]orporate [d]ocuments [described elsewhere in the schedule]. The remaining $13,000,000 shall be paid to the plaintiff in equal quarterly installments of $325,000, due on the second payroll installment date each month, for a term of [ten] years ([forty] quarterly payments in total)."

[9] The plaintiff's counsel admits that he "mistakenly suggested" the use of a deferred compensation agreement in the plaintiff's proposed orders.

[10] Alternatively, if the court determined that the payment of the plaintiff's 40 percent interest was not tax deductible to Exusia, then the defendant requested that the court extend the time period for the buyout.

[11] On July 9, 2019, the trial court ordered that an automatic appellate stay applied to its orders requiring the defendant (1) to sign the corporate documents prepared by the plaintiff's corporate counsel and (2) to remit quarterly payments to the plaintiff. On August 7, 2019, the court issued an order requiring the defendant to make certain monthly and quarterly payments to the plaintiff pursuant to a payment schedule.

[12] The plaintiff also argues that we should decline review of the defendant's appeal because the defendant had filed his own motion to clarify (which the court did not grant). We find this contention to be without merit.

[13] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ." See also Practice Book § 17-4.

[14] Although the defendant maintains that the granting of the plaintiff's January 15, 2019 motion resulted in a modification of the judgment of dissolution, the defendant does not challenge on appeal the merits of that ruling; rather, the crux of the defendant's claim is that the trial court committed error by modifying the judgment in response to the plaintiff's motion to "clarify and effectuate" the judgment. Thus, we do not address whether the court erred on the merits in modifying the dissolution judgment.

Additionally, in his principal appellate brief, the defendant thinly asserts that (1) the court did not hear argument before granting the plaintiff's January 15, 2019 motion and, thus, did not provide him with a "full opportunity to be heard," and (2) the court, during the hearing on his motion to reargue, did not permit him to offer expert testimony on the implications of the court's modification of the dissolution judgment. In her appellate brief, the plaintiff argues, inter alia, that the defendant has failed to adequately brief these "ancillary" claims. In his reply brief, the defendant asserts that there are no " 'ancillary' issues" before this court and that "the issue in this appeal is whether the trial court improperly modified its dissolution judgment on a motion to clarify that judgment. [The defendant] was heard on this subject in the trial court and presented testimony in opposition to [the plaintiff's] efforts to 'clarify' away her own mistake in calling for a deferred compensation agreement." In light of the foregoing, we conclude that the defendant is not pursuing any additional claims on appeal regarding the court's granting of the January 15, 2019 motion without holding a hearing or declining to allow the defendant to offer expert testimony during the hearing on his motion to reargue.

[15] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree . . . dissolving a marriage . . . pursuant to a complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. . . ."

[16] The defendant claims that this court's decision in *Miller* v. *Miller*, 16 Conn. App. 412, 547 A.2d 922, cert. denied, 209 Conn. 823, 552 A.2d 430 (1988), supports his position. We are not persuaded. In *Miller*, the trial court rendered a judgment of dissolution in which, inter alia, it awarded the plaintiff lump sum alimony in the amount of $500,000. Id., 414. The dissolution judgment provided that the defendant could pay the lump sum alimony

owed to the plaintiff by transferring securities to her. Id., 416. To comply with the alimony order, the defendant transferred to the plaintiff shares of stock with a market value of $499,923.25 and remitted a check to her for the remaining balance. Id., 414. Within four months of the dissolution judgment, the plaintiff filed a "motion for clarification" asking: "With regard to the lump sum alimony payment of $500,000, what limitations, if any, are there on the defendant's right to transfer to the plaintiff securities that are low in basis, low in dividend yield, and/or not likely to appreciate?" (Internal quotation marks omitted.) Id. In response to the motion, the court issued a memorandum of decision stating that the dissolution judgment had "awarded the plaintiff lump sum alimony of $500,000 which can be invested and earn the plaintiff about $50,000 a year" and that the defendant's transfer of stock did not satisfy the alimony order. Id., 415. On appeal, the defendant claimed that the trial court improperly modified the dissolution judgment in response to the plaintiff's "motion for clarification." Id., 415–16. This court agreed with the defendant, determining that the trial court had impermissibly modified the dissolution judgment. Id., 416–17. This court further observed that the plaintiff had neither appealed from the dissolution judgment nor filed a motion to open and vacate the judgment. Id., 416.

We consider *Miller* to be distinguishable from the present case. There is no indication that the "motion for clarification" filed in *Miller* requested that the trial court modify the dissolution judgment; rather, the only relief sought by the plaintiff in *Miller* was a clarification of the judgment. Thus, as in *Von Kohorn* v. *Von Kohorn*, supra, 132 Conn. App. 715–16, the trial court in *Miller* erred by modifying the dissolution judgment when the plaintiff did not request such relief. In contrast, in the present case, the plaintiff's January 15, 2019 motion, in substance, requested that the trial court open and modify the dissolution judgment.

[17] The defendant also claims that if the trial court erred in granting the plaintiff's January 15, 2019 motion, then it also erred in entering its orders on March 18, 2019, providing that "[t]he plaintiff shall pay no taxes on the money she receives as a result of the redemption agreement," and on April 24, 2019, providing that the corporate documents prepared by the plaintiff's corporate counsel would be revised to include certain language proposed by the plaintiff. As a result of our conclusion that the court did not err in granting the January 15, 2019 motion, we need not address these remaining claims.