******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MARY CUNNINGHAM *v.* GERARD CUNNINGHAM
## (AC 43297)

Bright, C. J., and Elgo and Cradle, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the decision of the trial court granting the defendant's motion for a domestic relations order relating to distributions from his pension plan. In the trial court's memorandum of decision dissolving the parties' marriage, the court ordered that the defendant's pension benefit held with his employer, D Co., be divided with the plaintiff. The defendant subsequently filed a motion seeking the entry of a domestic relations order with regard to the pension benefit, attached to which was a proposed order and a schedule, the terms of which were agreed to by the parties, setting forth the plaintiff's share of the defendant's pension income as of the date of dissolution. The court subsequently entered a domestic relations order that incorporated the language of the defendant's proposed order, and the plaintiff's appeal followed. *Held*:

1. The plaintiff's claim that the trial court improperly modified the property distribution set forth in the dissolution judgment by requiring her to assign a portion of the joint survivor annuity to a third party was unavailing: the court's order effectuated the dissolution judgment by ensuring that any survivor benefit that the plaintiff received is based on the value of the pension benefit as of the time that the dissolution judgment was rendered, which value was the basis of the parties' calculation of the plaintiff's annual pension benefit; thus, the order did not impermissibly modify the judgment, but merely protected its integrity and ensured that the plaintiff did not receive an unintended windfall.

2. The plaintiff could not prevail on her claim that the court's postjudgment order constituted an impermissible modification of the dissolution judgment because the order required the plaintiff to share in the cost of the joint survivor annuity election: in the dissolution judgment, the court ordered the defendant to elect a 50 percent joint and survivor annuity, and the postjudgment order merely stated that the defendant had elected payment in the form of a 50 percent joint and survivor annuity with the plaintiff as the survivor annuitant and that both parties would share, in proportion, the cost of the election of that annuity; the order did nothing more than confirm that the election of the annuity resulted in a cost to both parties in the form of a lesser current pension benefit.

3. The plaintiff's claim that the trial court improperly ordered that both parties would share equally in any future reductions in the defendant's pension benefit that may result from decreased contributions to the pension plan by D Co. was unavailing: the plaintiff could not prevail in her argument that the issue of future reductions in the defendant's pension benefit was not ripe for adjudication by the trial court because the court's order merely clarified and effectuated the dissolution judgment and, to the extent that the court rendered a judgment addressing a potential future contingency, it did so when it rendered the dissolution judgment; moreover, the dissolution judgment provides that the parties are to share equally in the pension benefits that were vested and accrued as of the date that the dissolution judgment was rendered, and the court's postjudgment order was consistent with that judgment, which was entered in order to protect the integrity of its original judgment and to clarify any ambiguity that might result from D Co.'s reduction or termination of such benefits, and substantial deference was accorded to the court's clarification of its own order, its interpretation of which was not manifestly unreasonable; furthermore, the court did not improperly modify the dissolution judgment by adopting a formula that could result in a reduction of the plaintiff's pension benefit, because the court's order did no more than effectuate the dissolution judgment by clarifying that her share of the benefit was subject to reductions to the same extent that the defendant was affected.

Argued November 19, 2020—officially released May 4, 2021

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Shay, J.*, rendered judgment dissolving the marriage and granting certain other relief, from which the plaintiff appealed to this court, *Gruendel, Bear* and *Flynn, Js.*, which affirmed the trial court's judgment; thereafter, the court, *Shay, J.*, granted the defendant's motion for a domestic relations order, and the plaintiff appealed to this court. *Affirmed.*

*Joseph T. O'Connor*, for the appellant (plaintiff).

*Thomas M. Shanley*, for the appellee (defendant).

*Opinion*

BRIGHT, C. J. The plaintiff, Mary Cunningham, appeals from the judgment of the trial court granting the motion of the defendant, Gerard Cunningham, for a domestic relations order relating to distributions from his pension plan. On appeal, the plaintiff claims that the court improperly modified the property division set forth in the parties' 2011 dissolution judgment by (1) requiring the plaintiff, at the defendant's direction, to assign a portion of her 50 percent joint survivor annuity from the defendant's pension benefit to a third party, (2) requiring the plaintiff to share in the cost of the 50 percent joint survivor annuity election under the pension plan, and (3) adopting a formula that could result in an unjustified reduction to the plaintiff's marital portion of the retirement benefit that she receives under the pension plan. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are necessary to our determination of the issues presented on appeal. On March 9, 2011, the trial court rendered a dissolution judgment, terminating the parties' marriage. In its memorandum of decision, the court issued orders regarding the distribution of the nonqualified, non-funded pension plan benefit (pension benefit) provided to the defendant by his employer, Deloitte Consulting, LLC (Deloitte). In particular, the court ordered: "Effective as of the date of this memorandum of decision, that portion of the [defendant's] Deloitte . . . [non]-qualified, [non]funded [p]lan . . . through his employment and vested and accrued as of the date of this memorandum of decision, net after an adjustment for federal and state taxes in the event that the [defendant] incurs any such tax on the portion distributed to the [plaintiff], shall be divided by means of [a] domestic relations order . . . which shall be prepared by the [defendant's attorney] or at his direction, at his sole expense, 50 percent to the [defendant] and 50 percent to the [plaintiff]." (Emphasis omitted.) The court further ordered: "Unless the parties shall otherwise agree, the [defendant] shall elect a 50 percent joint and survivor annuity, so called, and in the event that the [defendant] shall predecease the [plaintiff] prior to drawing his pension [benefit], the [plaintiff] shall be entitled to 100 percent of that portion of the [pre]retirement benefit vested and accrued as of the date of this memorandum of decision. Any benefit vesting and accruing thereafter shall belong to the [defendant]. The foregoing notwithstanding, it is the intention of the court that for purposes of calculating the coverture period for either the retirement or [pre]retirement benefit, that the numerator of the fraction shall be equal to the length of time in whole months, beginning with the first day of the month in which the parties were married and ending with the last day of the month in which the marriage was dis-

solved, and that the denominator shall be equal to the length of time in whole months, beginning with the first day of the month in which the [defendant] commenced employment with Deloitte and ending with the last day of the month in which the marriage was dissolved. The [plaintiff] and her attorney shall be entitled to any and all information regarding the [pension plan] necessary for a review of the [domestic relations order]. The court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the [domestic relations order] and the division of the [pension benefit]." (Emphasis omitted.) In its memorandum of decision, the court also noted that "[n]either party offered any evidence as to the present value of this retirement benefit, however, each has offered a proposed distribution of this marital asset, if, as and when it is paid."

The plaintiff appealed from that judgment of dissolution, claiming, inter alia, that the trial court abused its discretion in the manner in which it divided the pension benefit. See *Cunningham* v. *Cunningham*, 140 Conn. App. 676, 678, 59 A.3d 874 (2013). This court disagreed and affirmed the trial court's judgment. See id.

In March, 2019, the defendant filed a motion seeking the entry of a domestic relations order with regard to the pension benefit. The defendant attached to his motion a proposed order. Attached to the proposed order as exhibit A was a schedule, the terms of which were agreed to by the parties on the defendant's retirement on June 2, 2018, setting forth the plaintiff's share of the defendant's pension benefit as of the date of dissolution. According to exhibit A, after various deductions, the plaintiff was to receive 41 percent of the net pension benefit, based on the value of the pension benefit at the time of dissolution, to be paid to the defendant, or $84,261. This amount was subject to annual cost of living adjustments. Relevant to this appeal, the proposed order addressed three issues. First, the order provided that, if the defendant predeceased the plaintiff, the plaintiff's survivor benefit would be capped at $84,261 plus cost of living adjustments. Pursuant to the proposed order, any benefit above that amount would be paid either by Deloitte or the plaintiff to "the account designated by the [defendant] at his discretion, before his death or if not by the [defendant's] executor." The defendant requested this language because, although the $84,261 the plaintiff was to receive reflected the value of the plaintiff's survivor benefit based on the value of the defendant's pension benefit on the date of the marital dissolution in 2011, the defendant continued to work at Deloitte for seven years postdissolution, thereby increasing the value of his pension benefit. The defendant's proposed order would preclude the plaintiff from receiving a survivor's benefit based on the increased value postdissolution and would allow the defendant to designate a third

party to receive that portion of the survivor benefit based on the postdissolution increase in the value of the pension benefit.

Second, the proposed order provided that the plaintiff and the defendant would share equally the cost of the defendant's selecting the survivor annuity option for his pension benefit. The "cost" of the election simply was that the defendant's pension benefit during his life was reduced because a benefit would continue to be paid to the plaintiff or other designee on the defendant's death.

Third, the proposed order provided that the parties would share "equally in any future reductions implemented by Deloitte . . . ." The defendant included this language because the pension plan was nonfunded, and, as a result, his pension benefit was tied to Deloitte's economic performance. Thus, it was possible that, if Deloitte had a poor economic year, his pension benefit would be reduced from the base number in place at the time he retired. In that event, the defendant sought in the proposed order that the plaintiff's share of the pension benefit be reduced by the same percentage that his share would be reduced.

The plaintiff filed an objection to the defendant's motion on several grounds. As to the proposal that capped the plaintiff's survivor benefit at $84,261, the plaintiff argued that any such order would constitute an impermissible modification of the court's property distribution orders entered at the time of dissolution. As to the proposal that the parties share equally the cost of the survivor benefit election, the plaintiff argued that the order would impose an obligation on her not contemplated by the court's dissolution judgment. Finally, with respect to the defendant's proposed language that the parties equally share the risk of a reduction in the defendant's pension benefit, the plaintiff argued that the proposed order was speculative and unnecessary because there had been no such reduction and, if one were to occur, the proposed order improperly applied such reduction evenly to both parties when the defendant should bear the risk of any reduction so long as the value of his pension benefit, even after any reduction, is greater than the value of the benefit at the time of the dissolution of the marriage.

The court conducted a hearing on the defendant's motion on May 23, 2019. After receiving additional briefs from the parties, the court ordered that the defendant make certain changes to his proposed domestic relations order and resubmit it to the court for its signature. None of the changes requested by the court related to the provisions proposed by the defendant that are the subject of this appeal. On September 18, 2019, after receiving the revised proposed order from the defendant, the trial court entered a domestic relations order regarding the pension benefit (2019 order), which incor-

porated the language from the defendant's proposed order. Incorporated into the court's order is the same exhibit A that was attached to the defendant's proposed order. This appeal followed.

I

The plaintiff first claims on appeal that the court improperly modified the property distribution set forth in the dissolution judgment by requiring her to assign a portion of the 50 percent joint survivor annuity to a third party, at the defendant's direction, where the dissolution judgment required the defendant simply to name the plaintiff as beneficiary of a 50 percent joint survivor annuity. The defendant maintains that the 2019 order was not a modification of the property distribution orders entered as part of the dissolution judgment, but was, instead, necessary to effectuate the dissolution judgment, to ensure that the plaintiff would receive her share of the pension benefit, while also preventing her from receiving benefits that accrued after the date of the dissolution judgment, in accordance with the clear language of the dissolution judgment. We agree with the defendant.

We begin with the relevant standard of review. "Because [t]he construction of a judgment is a question of law for the court . . . our review of the . . . claim is plenary. As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Perry* v. *Perry*, 156 Conn. App. 587, 593, 113 A.3d 132, cert. denied, 317 Conn. 906, 114 A.3d 1220 (2015).

It is well established that pension benefits are a form of property. See *Thomasi* v. *Thomasi*, 181 Conn. App. 822, 850, 188 A.3d 743 (2018). "Although the court does not have the authority to modify a property assignment, a court, after distributing property, which includes assigning the debts and liabilities of the parties, does have the authority to issue postjudgment orders effectuating its judgment. . . . Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged. . . . Thus, if the . . . motion . . . can fairly be construed as seeking an effectuation of the judgment rather than a modification of the terms of the property settlement, this court must favor that interpretation. . . .

"[W]e have recognized that it is within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original]

judgment." (Citation omitted; internal quotation marks omitted.) *O'Halpin* v. *O'Halpin*, 144 Conn. App. 671, 677–78, 74 A.3d 465, cert. denied, 310 Conn. 952, 81 A.3d 1180 (2013).

"A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the [subject matter] intact. . . . In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith." (Internal quotation marks omitted.) *Morton* v. *Syriac*, 196 Conn. App. 183, 199, 229 A.3d 1129, cert. denied, 335 Conn. 915, 229 A.3d 1045 (2020). "In order to determine the practical effect of the court's order on the original judgment, we must examine the terms of the original judgment as well as the subsequent order." *Stechel* v. *Foster*, 125 Conn. App. 441, 447, 8 A.3d 545 (2010), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011).

In its 2011 dissolution judgment, the court applied the present division method of deferred distribution in its determination of the percentage of the pension benefit to which each of the parties was entitled.[1] The court awarded 50 percent of the defendant's pension benefit to the defendant and 50 percent of the benefit to the plaintiff, subject to a coverture fraction formula provided by the court. The court further ordered that "the [defendant] shall elect a 50 percent joint and survivor annuity, so called, and in the event that the [defendant] shall predecease the [plaintiff] prior to drawing his pension, the [plaintiff] shall be entitled to 100 percent of that portion of the [pre]retirement benefit vested and accrued as of the date of this memorandum of decision."[2] (Emphasis omitted.) The judgment further provides that "[a]ny benefit vesting and accruing thereafter shall belong to the [defendant]." The court retained jurisdiction to deal with any issues that may arise with regard to the preparation and filing of the domestic relations order and the division of the pension benefit. See *Cunningham* v. *Cunningham*, supra, 140 Conn. App. 686 ("[the trial court], having determined the formula for the division of the assets received by the defendant pursuant to the [pension plan], had discretion to retain jurisdiction to effectuate its judgment by deal[ing] with any issues which may arise with regard to the preparation and filing of the [domestic relations order] and the division of the [nonqualified plan]" (internal quotation marks omitted)).

It is undisputed that, because the pension plan was a nonqualified, nonfunded plan, Deloitte has refused to undertake the responsibility to pay the plaintiff her percentage of the pension benefit directly. Consequently, the defendant is required to make payments to the plaintiff of her share of the pension benefit after the defendant receives payments of the entire benefit

from Deloitte. It also is undisputed that the defendant retired in 2018, and began receiving benefits pursuant to the pension plan. Finally, it is undisputed that, at that time, the parties agreed to the calculation of the plaintiff's share of the pension benefit and that agreement is set forth in exhibit A to the 2019 order. As had been ordered by the court, the defendant elected a 50 percent joint survivor annuity and has been making direct payments to the plaintiff pursuant to the dissolution judgment and exhibit A.

At issue in this claim is paragraph 10 of the 2019 order. It provides in relevant part: "If [the defendant] is the first to die, [the plaintiff] will receive both the marital and the [non]marital portions of the survivor annuity benefit directly from the [pension plan]. Upon the [defendant's] death, any and all joint survivor benefits that exceed the monthly amount that was payable to the [plaintiff] prior to the [defendant's] death, which amount represented the [plaintiff's] marital portion of the [pension plan] benefit, to the extent the said amount exceeds $84,261 (including any [cost of living] adjustments), the said amount shall be subsequently paid by Deloitte to the account designated by the [defendant] at his discretion, before his death or if not by the [defendant's] executor. To effectuate the foregoing, the [plaintiff] shall direct Deloitte to pay said excess amount directly to the said account providing the [defendant's] executor copies of the forms for approval ten . . . days prior to submission to Deloitte (a current copy of said form attached as exhibit B and a confirmation from Deloitte attached as exhibit C hereto) and a fully executed copy. [The defendant's estate] shall be deemed a third-party beneficiary to this agreement. Only if Deloitte will not subsequently make direct payments, [the plaintiff] shall make payments to the said account within ten . . . days of receiving said payments."

The plaintiff argues that paragraph 10 modifies the property distribution in the dissolution judgment because it eliminates her right under the judgment to receive 100 percent of the survivor annuity to be paid on the defendant's death and, instead, caps her survivor benefit at $84,261, plus cost of living adjustments. The defendant agrees that paragraph 10 has the effect of limiting the survivor benefit that the plaintiff will receive to less than 100 percent of the survivor benefit that Deloitte would pay on the defendant's death. The defendant argues that such a result is consistent with the dissolution judgment, merely effectuates the judgment, and in no way modifies the judgment. We agree with the defendant.

As this court noted in its decision on the defendant's appeal from the dissolution judgment: "The parties do not dispute that . . . the plaintiff will receive 41 percent of the defendant's [pension benefit] *valued as of the date of the dissolution of the marriage*." (Emphasis

added.) *Cunningham* v. *Cunningham*, supra, 140 Conn. App. 685. Furthermore, the dissolution judgment explicitly provides that "[a]ny benefit vesting and accruing [after the date of dissolution] shall belong to the [defendant]." Paragraph 10 of the 2019 order effectuates the dissolution judgment by ensuring that any survivor benefit that the plaintiff receives is based on the value of the pension benefit at the time of the dissolution judgment, which is reflected in exhibit A and is the basis for the parties' calculation of the plaintiff's annual $84,261 pension benefit. Because the defendant continued to accrue value in the pension plan after the dissolution judgment was rendered and until he retired, the court needed a mechanism to ensure, as required by the dissolution judgment, that the increased value of the pension benefit that accrued and vested after the date of the dissolution judgment "belong[ed] to the defendant." In fact, at the hearing on the defendant's motion, the court, in stating its intention to enter an order substantially as submitted by the defendant, indicated that, without paragraph 10, if the defendant predeceased the plaintiff, the plaintiff "may get the entire [survivor benefit] as . . . the alternate payee. But that clearly is not what the court intended." Furthermore, the court anticipated at the time that it rendered the dissolution judgment that an order like the 2019 order might be necessary by stating in the judgment that the court retained jurisdiction "to deal with any issues which may arise with regard to . . . the division of the [pension benefit]." Paragraph 10 of the 2019 order is entirely consistent with the court's retention of jurisdiction.

Viewing paragraph 10 of the 2019 order in conjunction with the dissolution judgment, we conclude that paragraph 10 does not modify the dissolution judgment, but merely protects the integrity of that judgment and ensures that the plaintiff does not receive an unintended windfall.[3] Accordingly, the plaintiff's claim is without merit.

## II

Next, the plaintiff claims that the 2019 order constitutes an impermissible modification of the 2011 dissolution judgment because the order requires the plaintiff to share in the cost of the 50 percent joint survivor annuity election. We are not persuaded.

As set forth in part I of this opinion, because the construction of a judgment is a question of law for the court, our review of the plaintiff's claim is plenary. See *Perry* v. *Perry*, supra, 156 Conn. App. 593.

Paragraph 9 of the 2019 order provides: "The [defendant] elected payment in the form of a 50 percent joint and survivor annuity with the [plaintiff] as the survivor annuitant, as ordered. The [plaintiff] shall proportionately share the cost of the 50 percent joint and survivor

annuity. The [defendant] has commenced benefit payments at the earliest date permitted by the [pension plan]." At oral argument before this court, the defendant's counsel stated that the referenced costs at issue in the second claim are solely the reduced current monthly retirement benefits that the parties receive as a result of the election of the 50 percent future joint survivor annuity. In essence, the parties are paying for the cost of the survivor annuity by receiving a lesser benefit during the defendant's lifetime. This court asked the plaintiff's counsel at oral argument whether he accepted the representation of the defendant's counsel that the defendant is not seeking any additional costs that previously have not been incorporated into the court's orders. The plaintiff's counsel stated that he perceived the representation to be a judicial admission and that this court can "take that out or leave it in . . . ." The plaintiff has identified no other "costs" associated with the survivor annuity election.

In the dissolution judgment, the court ordered the defendant to elect a 50 percent joint and survivor annuity. Paragraph 9 of the 2019 order merely states that the defendant elected payment in the form of a 50 percent joint and survivor annuity with the plaintiff as the survivor annuitant and that both parties would share, in proportion, the cost of the election of that annuity. We agree with the defendant that paragraph 9 does nothing more than confirm that the election of the survivor annuity resulted in a "cost" to both parties in the form of a lesser current pension benefit. Accordingly, we conclude that the order does not constitute an impermissible modification of the dissolution judgment.

### III

Last, the plaintiff claims that the court improperly ordered that both parties share equally in any future reductions in the defendant's pension benefit that may result from decreased contributions to the pension plan by Deloitte. At issue is the following language from the 2019 order: "In accordance with Deloitte's calculation as set forth in exhibit A and confirmed in exhibit C, attached hereto, the [plaintiff] shall receive an annual pretax payment in the amount of $84,261 (or $7021.75 monthly), and said amount shall be reduced by federal, state and local taxes paid by the [defendant] if, as and when the [defendant] receives payments from Deloitte. As a [non]qualified, [non]funded benefit each party shares equally in any future reductions implemented by Deloitte (i.e., a 2 percent reduction by Deloitte in any year reduces both [parties'] benefits by 2 percent)." (Emphasis omitted.) The defendant argued before the court that, because Deloitte refused to make any payments directly to the plaintiff, such language was required in the 2019 order *to clarify* what the defendant would be obligated to pay the plaintiff as her share of

the pension benefit if the payments he received from Deloitte were reduced.

The plaintiff makes several arguments in response. The plaintiff first contends that the issue of what the defendant's obligation might be if Deloitte reduces future payments to the pension plan was not ripe for adjudication. Second, the plaintiff contends that the court erred in materially changing the dissolution judgment and that it did so without evidentiary support. Third, the plaintiff argues that the court improperly implemented a formula that would unjustifiably reduce the plaintiff's marital portion of the benefit. We are not persuaded by any of these arguments.

A

We first address the plaintiff's contention that, because the possibility that Deloitte might someday reduce its payments under the pension plan is hypothetical, the issue was not ripe for adjudication by the court. "[J]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Footnote omitted.) *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 569, 858 A.2d 709 (2004). "The problem is best seen in a twofold aspect, requiring [the court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. . . . [W]e will decide a case only when it presents a live controversy which can be resolved by relief that is within the court's power to grant." (Internal quotation marks omitted.) *Forcier* v. *Sunnydale Developers, LLC*, 84 Conn. App. 858, 865, 856 A.2d 416 (2004).

"Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) Id.

"[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . [and we therefore] must be satisfied that the case before [us] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Internal quotation marks omitted.) *Countrywide Home Loans Servicing, L.P.* v. *Peterson*, 171 Conn. App. 842, 847, 158 A.3d 405 (2017). "The difference between an abstract question and a case or controversy is one of degree . . . and is not discernible by any precise test." (Internal quotation marks omitted.) *Babbitt* v. *United Farm*

*Workers National Union*, 442 U.S. 289, 297, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979). Because an issue regarding justiciability raises a question of law, our appellate review is plenary. See *Office of the Governor* v. *Select Committee of Inquiry*, supra, 271 Conn. 569.

We are not persuaded by the plaintiff's ripeness argument because it is founded on an incorrect premise. The plaintiff assumes that the language in the 2019 order providing that the parties would share equally the impact of any reductions in Deloitte's contributions to the pension plan constitutes a new order of the court or an impermissible modification of the dissolution judgment. For the reasons set forth in parts III B and C of this opinion, we conclude that it is neither. The court's order merely clarifies and effectuates the dissolution judgment. Thus, to the extent that the court rendered a judgment addressing a potential future contingency, it did so when it rendered the dissolution judgment in 2011. Furthermore, the plaintiff concedes in her principal brief that "[i]t was known at the [dissolution] trial, that there was/is a possibility that the [pension plan] benefit could be reduced in the future based upon certain limitations under the [plan]." Consequently, when the court ordered, as part of the dissolution judgment, that the parties would share equally in the defendant's pension benefit, the plaintiff understood that there was a possibility that her share could be negatively impacted by a reduction in Deloitte's contributions. In fact, she agrees that at some level of reduction her share of the benefits necessarily would be impacted, and that the size of the impact would be contingent on the amount by which Deloitte reduces its contribution. For example, if Deloitte ceased payments to the pension plan completely and the defendant's pension benefit was reduced to zero, the plaintiff's share of the benefit would also be reduced to zero. The plaintiff does not argue that it was error for the court at the time of the dissolution to render a judgment that included such a contingency. Nor would such an argument have any merit. The circumstances in this case are akin to a court ordering, at the time of dissolution, that the parties sell the marital home and evenly split the proceeds of the sale, and then issuing a clarifying order that the parties are also to share equally in the costs of selling the home. It cannot reasonably be argued that, because the sales price of a property or its closing costs are unknown at the time of the judgment, the court would be without jurisdiction to issue a clarifying order because the issue is unripe. The same is true in this case. The plaintiff's ripeness argument is without merit.

B

As to the merits of the plaintiff's challenge to the court's order that both parties share equally in any future reductions in the defendant's pension benefit

that may result from decreased contributions to the pension plan by Deloitte, the plaintiff first posits that, "[b]y simply adopting the defendant's request, without offer or inquiry into the defendant's current [pension plan] benefits, the trial court made a material change to the judgment . . . ." The plaintiff provides no analysis in support of this assertion, but merely cites to two Supreme Court cases and to two cases from this court. The plaintiff then concludes her "argument" by stating: "This error is compounded by the fact that the court made such orders without evidence as to the amount of the defendant's current [pension plan] benefit. Orders entered without [proper] evidentiary support constitute [plain] error." We disagree that the 2019 order materially changed the dissolution judgment with respect to how the parties share the defendant's retirement benefit under the pension plan.

"It is well settled that [c]ourts have continuing jurisdiction . . . to fashion a remedy appropriate to the vindication of a prior . . . judgment . . . pursuant to [their] inherent powers . . . . When an ambiguity in the language of a prior judgment has arisen as a result of postjudgment events, therefore, a trial court may, at any time, exercise its continuing jurisdiction to effectuate its prior [judgment] . . . by interpreting [the] ambiguous judgment and entering orders to effectuate the judgment as interpreted . . . ." (Internal quotation marks omitted.) *Dicker* v. *Dicker*, 189 Conn. App. 247, 260, 207 A.3d 525 (2019).

"Although a trial court may interpret an ambiguous judgment, this court has emphasized that a motion for clarification may not . . . be used to modify or to alter the substantive terms of a prior judgment . . . and we look to the substance of the relief sought by the motion rather than the form to determine whether a motion is properly characterized as one seeking a clarification or a modification. . . .

"In order to determine whether the trial court properly clarified ambiguity in the judgment or impermissibly modified or altered the substantive terms of the judgment, we must first construe the trial court's judgment. It is well established that the construction of a judgment presents a question of law over which we exercise plenary review. . . . In construing a trial court's judgment, [t]he determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . . In addition . . . because the trial judge who issues the order that is the subject of subsequent clarification is familiar with the entire record and, of course, with the order itself, that judge

is in the best position to clarify any ambiguity in the order. For that reason, substantial deference is accorded to a court's interpretation of its own order. . . . Accordingly, we will not disturb a trial court's clarification of an ambiguity in its own order unless the court's interpretation of that order is manifestly unreasonable." (Internal quotation marks omitted.) *Lawrence* v. *Cords*, 159 Conn. App. 194, 198–99, 122 A.3d 713 (2015).

The dissolution judgment in the present case provides that the parties are to share equally the value of the pension benefit that was vested and accrued as of the date of the dissolution judgment. In order to protect the integrity of its original judgment and to clarify any ambiguity that may result from Deloitte's reduction or termination of such benefit, the court ordered that both parties share equally in any future reductions implemented by Deloitte. The provision in the court's 2019 order is consistent with its dissolution judgment. Furthermore, substantial deference is accorded to the court's clarification of its own order. The court, *Shay, J.*, effectuated and implemented its own order to clarify any ambiguity that might result in the event that Deloitte reduces or terminates its payments under the pension plan by requiring that both parties share equally in any reduction in said scenario. Accordingly, we conclude that the court's interpretation of its own order was not manifestly unreasonable.[4]

C

The plaintiff's last contention is related to her second argument. She argues that the court improperly modified the dissolution judgment by adopting a formula that could result in a reduction of her pension benefit under circumstances in which any reduction to the total benefit received by the defendant should, according to the plaintiff, be borne entirely by him. The plaintiff concedes that the parties agreed in exhibit A that the marital portion of the pension benefit on the date of the dissolution judgment was expected to be $276,230. The plaintiff argues that her portion of the benefit is calculated on the basis of that amount. Thus, the plaintiff contends that, if, as a result of reduced contributions from Deloitte, the defendant's gross pension benefit reaches $276,230 or less, then and only then would the plaintiff's share of the benefit be reduced in proportion with the defendant's share of the benefit. The plaintiff argues, however, that because the defendant's gross pension benefit has continued to grow postjudgment, any reduction in the pension benefit that leaves the defendant with at least $276,230 is the defendant's burden alone. In contrast, the defendant contends that the plaintiff is not entitled to a set amount that is reduced only if Deloitte reduces the benefit to an amount less than $276,230. According to the defendant, the plaintiff's approach would disproportionally and artificially

place the impact of any contribution reduction on the postjudgment portion of the pension benefit, when in fact, any such reduction would decrease the defendant's benefit as a whole. The defendant argues that if the entire benefit is reduced, then each constituent part of the benefit is also reduced by a proportionate amount. Consequently, according to the defendant, consistent with the dissolution judgment, the 2019 order ensures that the parties share equally the defendant's pension benefit as of the date of dissolution. We agree with the defendant.

As set forth in parts I and II of this opinion, because the construction of a judgment is a question of law for the court, our review of this claim is plenary. See *Perry* v. *Perry*, supra, 156 Conn. App. 593.

The dissolution judgment clearly provides that the parties are to share equally in the defendant's benefits under the pension plan. This includes not only the amount based on the value of the defendant's benefit at the time of the dissolution judgment, but also to adjustments to that value, for example, upward cost of living adjustments. Similarly, the plaintiff's share of the benefit is subject to deductions for federal, state and local taxes. Those taxes can change over time, which may result in the plaintiff receiving a larger or smaller net distribution. Nevertheless, the plaintiff does not claim that she is entitled to have her net benefit calculated based on the tax rates in effect at the time of dissolution. Changes to the defendant's total pension benefit, and, hence, to the plaintiff's share of the benefit, due to a funding reduction by Deloitte are no different. The 2019 order does no more than effectuate the dissolution judgment by clarifying that the plaintiff's share of the benefit is subject to such reductions to the same extent that the defendant is affected. For the reasons set forth in part III B of this opinion, we give substantial deference to Judge Shay's interpretation of his own order and conclude that his interpretation was not manifestly unreasonable.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Under the present division method [of deferred distribution], the trial court determines at the time of trial, the percentage share of the pension benefits to which the nonemployee spouse is entitled. . . . In other words, the court will declare that, upon maturity, a fixed percentage of the pension be distributed to each spouse." (Internal quotation marks omitted.) *Bender* v. *Bender*, 258 Conn. 733, 758, 785 A.2d 197 (2001). "One disadvantage of delaying distribution of the pension benefits is the cost of prolonging the parties' entanglement with each other." (Internal quotation marks omitted.) Id., 759.

[2] "If some event, such as the death, resignation or dismissal of the owning spouse, occurs so as to prevent the vesting of the pension benefits, the nonowning spouse may lose his or her retirement security. This risk would, of course, exist had the parties remained married. In order to minimize this risk, however, the court may choose . . . to require the owning spouse to provide survivorship benefits or life insurance." *Bender* v. *Bender*, supra, 258 Conn. 760.

[3] When it entered the 2019 order, the court also was concerned with the

defendant realizing an unintended windfall if the plaintiff were to predecease the defendant. Consequently, paragraph 11 was included in the order. Paragraph 11 provides: "Death of Alternate Payee: If [the plaintiff] is the first to die, her marital share of the [pension plan] benefit shall revert to the [defendant] and shall be paid by [the defendant] to an account designated by [the plaintiff] at her discretion, before her death or if not then paid to the executor of the estate of [the plaintiff] within ten . . . days of receipt of said payment. The [defendant's] payments shall be reduced by the [defendant's] prior year effective federal, state, and local tax rate." Although the plaintiff objects to paragraph 10 of the order, she has no objection to paragraph 11.

[4] We further reject the plaintiff's plain error argument. First, the plaintiff fails to explain why the court would need to take evidence before issuing a clarifying order. Second, "[t]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . An appellant cannot prevail . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Cane*, 193 Conn. App. 95, 126, 218 A.3d 1073, cert. denied, 334 Conn. 901, 219 A.3d 798 (2019). In the present case, the plaintiff has not demonstrated that the court erred, let alone that it committed an error so clear and so harmful as to constitute a manifest injustice.

---