******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CRISTIANE M. ALMEIDA *v.* RENATO ALMEIDA
(AC 41312)

Keller, Elgo and Bishop, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dis-
solved, appealed to this court from the judgment of the trial court
granting the plaintiff's motion for clarification of the dissolution judg-
ment. As part of its judgment of dissolution, the court had ordered, inter
alia, that the defendant quitclaim to the plaintiff all interest in certain
real property, and the defendant signed a quitclaim deed, assigning his
rights and interest in the property to the plaintiff. After the plaintiff
subsequently learned that the defendant's business partner was on the
deed of the property, she filed a postjudgment motion for clarification,
in which she asked the court to determine whether it intended for the
defendant to make whatever arrangements were necessary with his
business partner to transfer all interest in the property to the plaintiff
or if the court, instead, intended to award the plaintiff with a 50 percent
interest in the property. The court granted the plaintiff's motion, finding
that it had previously determined in its dissolution judgment that the
defendant's testimony regarding a business partner was not credible,
that it had previously ordered the defendant to quitclaim all interest in
the property to the plaintiff, and that it intended for the plaintiff to
acquire 100 percent interest in the property. The court, thus, ordered
the defendant to take the necessary measures to effectuate the terms
of the dissolution judgment. *Held* that the trial court improperly modified
the dissolution judgment when it issued its clarification order; that
court's order did not simply effectuate its existing judgment but, instead,
introduced a new element into the details of the judgment because, when
it became obvious that the defendant could not transfer 100 percent
ownership interest to the plaintiff solely by his execution of a quitclaim
deed, the court ordered the defendant to take additional steps beyond
quitclaiming his interest in the property to the plaintiff, and although
the plaintiff claimed that the court's original intent that the plaintiff
receive a 100 percent interest in the property is evinced by the language
in the dissolution judgment memorandum of decision, the court's subse-
quent order is premised on facts that it originally did not believe, as
the court, in its dissolution judgment, did not credit the defendant's
testimony that he was only a 50 percent owner of the property, and by
subsequently ordering the defendant to take the necessary measures so
that the plaintiff could acquire a 100 percent interest in the property,
the court substantively modified the dissolution judgment.

Argued March 5—officially released June 25, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Hartford and tried to the court, *Ficeto, J.*; judg-
ment dissolving the marriage and granting certain other
relief; thereafter, the court granted the plaintiff's motion
for clarification and issued a clarification of the dissolu-
tion judgment, and the defendant appealed to this court.
*Reversed*; *judgment directed.*

*David R. Peck*, with whom, on the brief, was *Brittany
Wallace*, for the appellant (defendant).

*Giovanna Shay*, with whom, on the brief, were
*Ramona Mercado-Espinoza* and *Enelsa Diaz*, for the
appellee (plaintiff).

*Opinion*

ELGO, J. In this postdissolution matter, the defendant, Renato Almeida, appeals from the judgment of the trial court granting the motion for clarification filed by the plaintiff, Cristiane M. Almeida. On appeal, the defendant claims that the court improperly modified the dissolution judgment when it rendered its clarification.[1] We agree and, therefore, reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties' marriage was dissolved on October 16, 2015. In its memorandum of decision, the court, *Ficeto, J.*, found, inter alia, that "[t]he defendant acquired four properties during the course of the marriage. The property at 409 Sigourney Street, Hartford [property], is where the parties made their home and the defendant currently resides. It is a three family home; the defendant resides in one unit and rents two. [The defendant] listed the value of [the property] at $144,000 on his financial affidavit. He alleges [that] he is only a 50 percent owner of [the property] and that his business partner owns 50 percent through a business entity known as Talyah Home Improvement, LLC. . . . All properties were purchased with cash. Counsel for the plaintiff inquired how the defendant was able to acquire the . . . properties with no loans or mortgages. [The defendant] testified that a sister brought him $100,000 from Brazil and that he used it as seed money for 'flipping' houses. He alleges [that] the money was his and that he had saved it in Brazil. He was unable to provide documentation relative to the $100,000. The defendant testified relative to his business entity, Talyah Home Improvement, LLC. There was no evidence introduced relative to either the limited liability [company] or its members. [The defendant] vaguely testified about his partner, who has been in Brazil for the past year. [The defendant] alleges that he deals with his partner's 'people.' A review of the defendant's tax returns for the years 2010, 2011, 2012, and 2014 show[s] no schedules related to income from a business entity known as Talyah Home Improvement, LLC.[2] . . . The court does not find credible [the defendant's] recitation relative to his financial affairs." (Footnote in original.)

As part of its judgment of dissolution, the court ordered, inter alia, that "[t]he defendant shall forthwith vacate and quitclaim to the plaintiff all interest in [the property]. [The] [p]laintiff shall thereafter be responsible for all expenses relating to said [property], including, but not limited to, real estate taxes, insurance, and utilities, and shall indemnify and hold the defendant harmless in regard to the same."

Subsequently, on December 4, 2015, the defendant signed a quitclaim deed, assigning his rights and interest in the property to the plaintiff.[3] On February 2, 2016,

the parties entered into an agreement, which provided, in relevant part, that the "[p]laintiff will execute a substitution of agent and interim change of member for Talyah Home Improvement, LLC, and [the] defendant will file said documents and pay the associated filing fees to the Connecticut Secretary of State. This will allow [the] plaintiff to lawfully collect rents at [the property] going forward."

On September 21, 2017, the plaintiff filed a motion for contempt in which she claimed: "1. On October 16, 2015, the court ordered the defendant to vacate and quitclaim to the plaintiff all interest in [the property]. 2. On December 4, 2015, the defendant quitclaimed to the plaintiff [the property]; however, it has come to the plaintiff's attention that there was another person on the deed of the property. 3. The plaintiff is now being sued by Domingos, Joelson, in care of Salatiel De Matos through a power of attorney. . . . 4. During the divorce proceedings, the defendant never stated that he was only [one-half] owner of the aforementioned property. 5. As a result, the plaintiff may have to sell the aforementioned property and [lose one half] of the equity in the home. 6. The defendant is in violation and in contempt of the court orders."

On December 4, 2017, the plaintiff filed a postjudgment motion for clarification, in which she argued that "[c]larification of the [dissolution] judgment [was] necessary to determine if the court intended for the defendant to make whatever arrangements were necessary with his business partner in Brazil to transfer 'all interest' in the [property] to the plaintiff, or if it was the court's intention to award the plaintiff with a 50 percent interest in the property and/or [the limited liability company]."

On December 5, 2017, the court, *Nastri, J.*, entered an order, which provided that: "1. Upon agreement of the parties, [the] plaintiff will withdraw the motion for contempt . . . and pursue the more appropriate motion for clarification filed [on] December 4, 2017. 2. The plaintiff's new motion will be calendared at a later date. It will be appropriate for Judge Ficeto to hear the plaintiff's new motion, as she was [the] judge who issued the judgment memorandum on October 16, 2015."

On January 5, 2018, without the motion ever being calendared, as ordered by Judge Nastri, the court entered an order granting the plaintiff's motion for clarification. That order stated in relevant part: "The court noted in its factual findings of October 16, 2015, that it did not find the defendant . . . credible relative to the ownership of the [property]. The defendant produced no evidence relative to the ownership of the property. He testified vaguely about a limited liability [company] and a partner in Brazil. He alleged that the partner resided in Brazil, so he dealt with the alleged

partner's representative. The court did not find the testimony credible. The court ordered that the defendant quitclaim 'all interest' to the plaintiff. The court intended that the plaintiff . . . acquire 100 percent interest in [the property] and be the sole owner of said property. The defendant is ordered to take the necessary measures to effectuate the terms of the judgment." From that decision, the defendant appeals.

On appeal, the defendant claims that the court improperly modified the dissolution judgment when it rendered its clarification order. In response, the plaintiff contends that the court's order was a proper clarification of its original judgment. We agree with the defendant.

We begin by setting forth our standard of review and relevant legal principles. "It is well established that [t]he court's judgment in an action for dissolution of a marriage is final and binding [on] the parties, where no appeal is taken therefrom, unless and to the extent that statutes, the common law or rules of [practice] permit the setting aside or modification of that judgment. Under Practice Book [§ 17-4], a civil judgment may be opened or set aside . . . [when] a motion seeking to do so is filed within four months from the date of its rendition. . . . Absent waiver, consent or other submission to jurisdiction, however, a court is without jurisdiction to modify or correct a judgment, in other than clerical respects, after the expiration of [that four month period] . . . .

"Even beyond the four month time frame set forth in Practice Book § 17-4,[4] however, courts have continuing jurisdiction to fashion a remedy appropriate to the vindication of a prior . . . judgment . . . pursuant to [their] inherent powers . . . . When an ambiguity in the language of a prior judgment has arisen as a result of postjudgment events, therefore, a trial court may, at any time, exercise its continuing jurisdiction to effectuate its prior [judgment] . . . by interpreting [the] ambiguous judgment and entering orders to effectuate the judgment as interpreted . . . . In cases in which execution of the original judgment occurs over a period of years, a motion for clarification is an appropriate procedural vehicle to ensure that the original judgment is properly effectuated. . . .

"Although a trial court may interpret an ambiguous judgment . . . a motion for clarification may not . . . be used to modify or to alter the substantive terms of a prior judgment . . . and we look to the substance of the relief sought by the motion rather than the form to determine whether a motion is properly characterized as one seeking a clarification or a modification. . . .

"In order to determine whether the trial court properly clarified ambiguity in the judgment or impermissibly modified or altered the substantive terms of the

judgment, we must first construe the trial court's judgment. It is well established that the construction of a judgment presents a question of law over which we exercise plenary review. . . . In construing a trial court's judgment, [t]he determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . . In addition . . . because the trial judge who issues the order that is the subject of subsequent clarification is familiar with the entire record and, of course, with the order itself, that judge is in the best position to clarify any ambiguity in the order. For that reason, substantial deference is accorded to a court's interpretation of its own order. . . . Accordingly, we will not disturb a trial court's clarification of an ambiguity in its own order unless the court's interpretation of that order is manifestly unreasonable." (Citations omitted; footnote in original; internal quotation marks omitted.) *Bauer* v. *Bauer*, 308 Conn. 124, 129–32, 60 A.3d 950 (2013).

"[T]he purpose of a clarification is to take a prior statement, decision or order and make it easier to understand. Motions for clarification, therefore, may be appropriate where there is an ambiguous term in a judgment or decision . . . but, not where the movant's request would cause a substantive change in the existing decision. Moreover, motions for clarification may be made at any time and are grounded in the trial court's equitable authority to protect the integrity of its judgments." (Citation omitted.) *In re Haley B.*, 262 Conn. 406, 413, 815 A.2d 113 (2003).

In the present case, the court, in its dissolution judgment memorandum of decision, ordered the defendant to *quitclaim* all interest in the property to the plaintiff, and the defendant subsequently signed a quitclaim deed, thereby assigning his interest to the plaintiff. Although the plaintiff essentially asked the court in her motion for clarification to clarify what it meant in its dissolution judgment order by "all interest" when it ordered the defendant to "quitclaim to the plaintiff all interest" in the property, she asserted that "[c]larification of the [dissolution] judgment [was] necessary to determine if the court intended for the defendant *to make whatever arrangements were necessary* with his business partner in Brazil to transfer 'all interest' in the [property] to the plaintiff . . . ." (Emphasis added.) The court's dissolution judgment order, however, identified that the specific action the defendant was required to take was to *quitclaim* all interest in the property. The plaintiff's motion sought to change the substance of the judgment by asking the trial court to revisit its original judgment and effectuate its original intent by

introducing a new element into its judgment—that the defendant not just quitclaim whatever interest in the property he was able to, but that he "make whatever arrangements were necessary" so as to be able to transfer his partner's interest as well. Accordingly, the plaintiff's motion more properly is characterized as a motion to modify because it "represent[s] an attempt to alter the substantive terms of the original judgment." *Mickey* v. *Mickey*, 292 Conn. 597, 606, 974 A.2d 641 (2009); see also *In re Haley B.*, supra, 262 Conn. 414 (motion for clarification properly characterized as motion to alter or to modify original judgment when trial court changed, on basis of mistake made at trial, visitation order by reducing frequency of visitation from weekly to monthly visitation in order to effectuate intent of original judgment); *Miller* v. *Miller*, 16 Conn. App. 412, 416–17, 547 A.2d 922 (motion for clarification improperly modified original judgment, which allowed defendant to satisfy $500,000 lump sum alimony award by transferring securities to plaintiff, by subsequently ordering that any securities transferred to plaintiff in satisfaction of lump sum alimony award pay dividends of at least $50,000 per year), cert. denied, 209 Conn. 823, 552 A.2d 430 (1988).

Moreover, by ordering in its clarification order that the defendant "take the necessary measures" so that the plaintiff could acquire a 100 percent interest in the property, the court did more than simply effectuate its existing judgment. In *Lawrence* v. *Cords*, 165 Conn. App. 473, 484, 139 A.3d 778, cert. denied, 322 Conn. 907, 140 A.3d 221 (2016), this court "explained the difference between postjudgment orders that modify a judgment rather than effectuate it. A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith." (Internal quotation marks omitted.) The court's clarification order in the present case introduced a new element into the details of the judgment because, when it became obvious that the defendant could not transfer 100 percent ownership interest to the plaintiff solely by his execution of a quitclaim deed, the court ordered the defendant to take additional steps beyond quitclaiming his interest in the property to the plaintiff. Accordingly, the court's order amounted to a modification of the dissolution judgment.

As the plaintiff correctly notes, in construing a marital dissolution judgment, the court's judgment must be interpreted as a whole. See *Bauer* v. *Bauer*, supra, 308 Conn. 131 ("The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed.

. . . The judgment should admit of a consistent construction as a whole." [Internal quotation marks omitted.]). The plaintiff asserts that the court's original intent that the plaintiff receive a 100 percent interest in the property is evinced by the language in the dissolution judgment memorandum of decision. Specifically, she points our attention to the language within the court's factual findings wherein the court states that it did not find credible the defendant's "recitation relative to his financial affairs." She also refers to the language within the dissolution judgment orders, which provide that the plaintiff will be responsible for all expenses associated with the property, including real estate taxes, insurance, and utilities. Despite these statements, however, the court recognized that the defendant had testified that he owned a 50 percent interest in the property, as was indicated on his financial affidavit. While the court did not credit the defendant's testimony, it also did not find that the defendant owned a 100 percent interest in the property, and there was no testimony or evidence submitted that would have supported such a finding.[5] Therefore, the court's subsequent order is premised on facts that it originally did not believe. "It is well established that disbelief of a witness is not the equivalent of proof." *State* v. *Simmons*, 188 Conn. App. 813, 843, 205 A.3d 569 (2019). Having not credited the defendant's testimony that he was only a 50 percent owner of the property, and having ordered the defendant to "take the necessary measures" so that the plaintiff could acquire a 100 percent interest in the property, the court substantively modified the dissolution judgment.

We also are not persuaded by the plaintiff's argument that the present case is "analogous" to *Bauer* v. *Bauer*, supra, 308 Conn. 124.[6] In *Bauer*, the judgment of dissolution rendered by the trial court provided that its memorandum of decision was incorporated by reference. Id., 126. Within its memorandum of decision, the court stated that the parties agreed to split equally the defendant's pension accounts. Id. When the court issued twelve orders at the end of its memorandum of decision, however, the court did not refer to the pension accounts. Id., 127. Neither party appealed from the court's judgment. Id. Years later, the plaintiff filed a motion for clarification asking the court to "reconfirm its previous order requiring [that] the defendant equally split his [pension accounts] with the plaintiff . . . ." (Internal quotation marks omitted.) Id. The court granted the motion for clarification; id.; and explained that "[b]ecause there is an alleged ambiguity or incompleteness in the decision of the trial court . . . [the] court will clarify that, pursuant to the parties' stipulation: The defendant is ordered to split equally his . . . pension [accounts] . . . ." (Internal quotation marks omitted.) Id., 128. On appeal, our Supreme Court concluded that, given the discrepancy between the trial

court's factual findings indicating that the parties would equally divide the defendant's pension accounts and the lack of a formal order to that effect, the judgment was ambiguous. Id., 132. The court further concluded that "a motion for clarification was the proper method for resolving the ambiguity because the motion did not seek to change the terms or substance of the judgment, but merely sought to resolve the ambiguity in the judgment by reconciling the discrepancy between the court's factual findings and its orders. . . . The plaintiff sought to clarify that the pension accounts would be split equally by the parties rather than awarded in their entirety to the defendant—she did not seek to change the percentage of the amount that would be awarded to her." (Citation omitted.) Id., 132–33. Our Supreme Court, thus, determined that "[n]ot only was [the trial court's] interpretation reasonable, but any other interpretation would have rendered the trial court's factual finding superfluous and inconsistent with its orders. Moreover, the clarification merely reiterated the factual finding as originally stated and, thus, did not change or modify the judgment." Id., 135.

The plaintiff correctly points out that the defendant in the present case, like the defendant in *Bauer*, did not raise on appeal any challenge to the trial court's factual findings. The plaintiff also contends that the present case is similar to *Bauer* because the court's clarification in the present case, like that in *Bauer*, "merely reiterated the factual finding[s] as originally stated and, thus, did not change or modify the judgment." Id. In making that analogy, however, the plaintiff misconstrues *Bauer*. In *Bauer*, the factual finding that was reiterated in the court's clarification was the court's statement that the parties agreed to split the pension accounts. Id., 132. In its clarification, the court took its prior factual finding regarding that agreement and clarified that it was part of its orders. The facts of the present case are markedly different.

Unlike *Bauer*, where the trial court stated that an agreement was reached by the parties as to the division of certain property in its factual findings and then reiterated that factual finding in its clarification; id., 135; in the present case, after the defendant had already quitclaimed his interest in the property to the plaintiff pursuant to the court's dissolution judgment, the court's clarification adds that the defendant "is ordered to take the necessary measures to effectuate the terms of the judgment" so that the plaintiff may acquire a 100 percent interest in the property. Accordingly, the court's clarification is not a reiteration of its previous order, as the plaintiff suggests, but, rather, constituted a substantive change to the dissolution judgment that introduces an additional element.[7]

For the foregoing reasons, we conclude that the trial court improperly modified the dissolution judgment

when it issued its clarification order.

The judgment is reversed and the case is remanded with direction to deny the plaintiff's motion for clarification.

In this opinion the other judges concurred.

[1] The defendant also claims that the trial court's order dated January 5, 2018, is unenforceable because the court had no authority to order the defendant to acquire an interest in property he did not have at the time of the dissolution. Because we agree with the defendant's first claim that the court improperly modified the dissolution judgment, we need not address this issue.

[2] "The 2013 tax returns were not submitted into evidence. The 2010, 2011, 2012 and 2014 tax returns contain a Schedule C Profit or Loss from Business for [another business entity]."

[3] Pursuant to General Statutes § 47-36f, "[a] deed entitled 'Quitclaim Deed,' when duly executed, has the force and effect of a conveyance to the releasee of all the releasor's right, title and interest in and to the property described therein except as otherwise limited therein, but without any covenants of title. A 'Quitclaim Deed' may be used as a release of a mortgage, attachment, judgment lien or any other interest in real property."

[4] "Practice Book § 17-4 provides in relevant part: '(a) Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the [S]uperior [C]ourt may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court. . . .' " *Bauer* v. *Bauer*, 308 Conn. 124, 130, 60 A.3d 950 (2013).

[5] Throughout the trial, the defendant testified that the property was owned by Talyah Home Improvement, LLC, and that he was a co-owner of that company. The defendant, however, did not provide any evidence to support his testimony. In his financial affidavit dated September 11, 2015, his most recent financial affidavit before the trial began, the defendant listed the property as an asset owned "joint with other," and he indicated that the value of his interest was one half of the equity in the property. The defendant's financial affidavit also included Talyah Home Improvement, LLC, as a business interest, of which he indicated he owned 50 percent. Although the plaintiff's counsel questioned the defendant about the company and his business partner, the plaintiff did not provide any evidence to suggest that the defendant was not a 50 percent owner of the property through the company, as he had claimed.

[6] In her appellate brief, the plaintiff also explicates the facts in *Ranfone* v. *Ranfone*, 119 Conn. App. 341, 987 A.2d 1088 (2010), and *Stewart* v. *Stewart*, 157 Conn. App. 601, 117 A.3d 958 (2015), but she does not offer any analysis as to how they apply to the present case beyond the conclusory statements: "This case is similar to *Bauer* and *Ranfone* and *Stewart*. The trial court's clarification resolved a latent ambiguity in the language of the judgment, was based on its original factual findings, and sought to effectuate the trial court's intent in the original order."

[7] We note that, inexplicably, the plaintiff asserts that the court's clarification order "did not require [the defendant] to acquire a new interest in the property; rather, it reconfirmed that the trial court had rejected his claim that he could not transfer the assets of the [limited liability company], specifically, [the property], to the plaintiff." The fact that the defendant has executed a quitclaim deed to the plaintiff and has assigned his rights in Talyah Home Improvement, LLC, to the plaintiff, and yet a second owner to the property has brought an action to protect that interest, undermines that argument.