******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEPHANIE BOLOGNA *v.* RICHARD BOLOGNA
(AC 43848)

Elgo, Suarez and DiPentima, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court denying her postjudgment motion for clarification. Pursuant to the parties' separation agreement, which was incorporated into the judgment of dissolution, the parties were to list their jointly owned home for sale prior to June 30, 2012, and equally divide the sale proceeds. Alternatively, either party could buy out the other's interest for 50 percent of the home's net value, which was to be calculated by subtracting any outstanding mortgages from the fair market value. The plaintiff was permitted to remain in the home until the date of sale, provided, inter alia, that she make the mortgage payments. Postjudgment, the parties agreed not to sell the home, and the plaintiff continued to reside in it and make the required mortgage payments, which increased in July, 2012, from interest only to principal and interest. In 2019, the plaintiff filed a motion for clarification, requesting that the trial court issue an order requiring the buyout price to be calculated using the mortgage balance as of the date of the separation agreement or as of June, 2012, in order to prevent the defendant from obtaining a windfall on the sale or buyout of the home, as the distribution of the sale proceeds or buyout price would not otherwise take into account the payments she had made on the mortgage between June, 2012 and 2019. Following a hearing, the trial court ordered the sale of the home, set the list price, required that the sale proceeds be equally divided in accordance with the separation agreement, and declined to change the calculation of the buyout price, and the plaintiff appealed to this court. *Held* that, in denying the plaintiff's postjudgment motion for clarification, the trial court did not improperly modify the parties' separation agreement but, rather, effectuated the terms of that agreement: the trial court correctly construed the plaintiff's motion for clarification as an impermissible motion for modification and properly determined that it did not have the authority to modify the terms of the agreement, as the agreement clearly stated the intent of the parties to equally divide the net proceeds of the sale of the home and to calculate the buyout price based on the mortgage amounts outstanding at the time of the buyout, the parties did not alter the manner in which the sale proceeds were to be distributed or the buyout price was to be calculated when they agreed to deviate from the judgment by not selling the home prior to the date required by the agreement, and, through her motion, the plaintiff sought to amend the agreement, rather than to clarify its terms, by altering the manner in which the buyout price was to be calculated, and such an amendment would cause a substantial change to the existing judgment; moreover, the separation agreement did not provide for a set off or credit for any mortgage payments made by the plaintiff, and the plaintiff acquiesced to the possibility that the defendant would receive more money from the sale or buyout of the home than initially contemplated when she decided, without further altering the terms of the agreement, not to sell the home or buy out the defendant prior to the date required by the agreement.

Argued April 8—officially released October 12, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Dennis F. Harrigan*, judge trial referee, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *McLaughlin, J.*, denied the plain-

tiff's motion for clarification, and the plaintiff appealed to this court. *Affirmed.*

*Michael J. Devine*, for the appellant (plaintiff).

*Jennifer Neal Bardavid*, for the appellee (defendant).

*Opinion*

SUAREZ, J. In this postdissolution matter, the plaintiff, Stephanie Bologna, appeals from the judgment rendered by the trial court in response to her postjudgment motion for clarification as well as the court's denial of her motion for reargument and reconsideration of its ruling on her motion.[1] The court concluded, in accordance with the terms of the parties' separation agreement that was incorporated into the judgment of dissolution, that the plaintiff was obligated to divide equally the proceeds of the sale of the marital home with the defendant, Richard Bologna. On appeal, the plaintiff claims that the court improperly modified the dissolution judgment when it denied her motion for clarification. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. The parties were married on June 1, 1997, and had two children born to the marriage. On May 6, 2010, the court, *Hon. Dennis F. Harrigan*, judge trial referee, rendered a judgment of dissolution, which incorporated by reference a separation agreement dated May 2, 2010.[2] At the time the court rendered its judgment, the parties jointly owned, among other things, a marital home in Stamford. Article 5 of the separation agreement governs the division of the parties' marital home. Section 5.1 (a) of the separation agreement provides in relevant part: "Title to the Marital Home is currently held in the parties' joint names, as joint tenants with rights of survivorship. The Marital Home is currently subject to [a] first mortgage in joint names with Cendant, with a current outstanding balance of approximately $651,000.00; and a Home Equity Line of Credit (HELOC) in joint names with Cendant, with a current outstanding balance of approximately $49,000.00."

Section 5.4 of the separation agreement governs the sale of the marital home and provides in relevant part: "Unless otherwise agreed to by the parties, the Marital Home shall be listed for sale according to the following:

"(a) By June 30, 2012 [t]he Marital Home will be listed for sale at a listing price that is agreed to by both parties  . . . .

"(c) Upon the sale of [the] Marital Home, after payment of the taxes, mortgages, conveyance taxes, broker's commission(s), [attorney's] fees, and any other expenses reasonably incident to sale, as a property settlement the remaining proceeds shall be equally divided (50/50) between the parties. However, if the resulting sale results in a deficit, then said deficit shall also be equally divided (50/50) between the parties."

Section 5.3 of the separation agreement provides in relevant part: "Until the closing of sale of the Marital Home, the parties agree to the following:

"(a) [The plaintiff] shall continue to live in the Marital Home. . . .

"(c) The parties shall continue to own the house as joint tenants with rights of survivorship.

"(d) Except as otherwise provided, *from the date of divorce until the closing of sale,* [*the plaintiff*] *shall pay the expenses related to the Marital Home (including but not limited to mortgage payments, taxes, insurance and utilities).* If [the plaintiff] does not make any required payment (e.g. a monthly mortgage payment), then [the defendant] may, at his election, make such payment and deduct that amount from his next alimony payment(s)." (Emphasis added.)

Section 5.4 (d) of the separation agreement includes a buyout provision, which provides in relevant part: "At any time up to when [the] Marital Home must be listed for sale, the parties can discuss a buyout by one of the other's interest. If one party buys out the other, it shall be for 50% of the net value, calculated as follows: the fair market value as determined by the average of three appraisals or market analyses (one appraisal or market analysis provided by [the plaintiff], one appraisal or market analysis provided by [the defendant], and one apprais[al] or market analysis that is jointly selected), less the amount of any outstanding mortgages or other liens, and less the costs of refinancing said outstanding mortgages and liens. Under any buyout, the terms of a buyout shall include refinancing and satisfying any then-current joint mortgage(s), and a transfer of [the] seller's interest in the Property to the buyer. If within 30 days of commencing said discussions, the parties cannot agree to all the terms of a buyout, then the Marital Home shall be listed for sale . . . ." Additionally, pursuant to § 5.4 (e) of the separation agreement, the court "shall retain jurisdiction over issues regarding the Marital Home until the closing of sale has been completed."

Instead of listing the marital home for sale by June 30, 2012, in accordance with § 5.4 (a) of the separation agreement, the parties agreed that, in order to keep their children in the same home and school district, they would not sell the home. At the time the parties entered into the separation agreement, the mortgage on the marital home was an adjustable rate mortgage wherein the monthly mortgage payments applied only toward interest. In July, 2012, the terms of the mortgage on the marital home were to reset, wherein the monthly payments increased to include interest and principal. The plaintiff continued to live in the home with her children and paid all expenses, including the mortgage, taxes, and insurance. From 2012 to 2019, the plaintiff's mortgage payments reduced the principal balance by more than $170,000.[3]

From 2012 through 2019, the parties discussed several options to buy out the defendant's interest in the

marital home but were unable to agree on the terms, and the house was never listed for sale. On June 7, 2019, the plaintiff filed a motion for clarification in which she requested that the court "intervene and issue a ruling that the buyout price should be calculated using the mortgage balances as they were at the time that the parties signed their separation agreement on May 2, 2010," or, alternatively, "when the property was supposed to be listed [for sale] in June of 2012." The plaintiff argued that "[t]he current situation was not contemplated by the parties at the time they signed the separation agreement on May 6, 2010, and as such the parties are not bound by the [buyout] provisions of [§] 5.4 (d)." She asserted that her mortgage payments from May, 2010 to June, 2019, added $175,000 of equity to the marital home and that to calculate the buyout amount using the balance of the mortgage in June, 2019, "would result in a windfall of $87,500 to the defendant." She added that she "ha[d] made numerous improvements to the property, to which the defendant has refused to contribute, and these improvements have either increased the fair market value of the property or prevented a loss of value." The plaintiff asserted that, "[s]hould the court rule that the buyout amount should be calculated using the mortgage balance of 2019 . . . the defendant would be unjustly enriched, and the plaintiff would be deprived of a fair and equitable division of the marital assets." On July 3, 2019, the defendant filed an objection to the motion for clarification in which he argued that the terms of the separation agreement were clear and unambiguous and that, by filing a motion for clarification, the plaintiff was improperly seeking "to alter the terms of the separation agreement to suit her purposes."

On November 5, 2019, the court, *McLaughlin, J.*, conducted an evidentiary hearing and heard testimony from the parties and witnesses.[4] On November 19, 2019, the court issued a memorandum of decision in which it ordered the sale of the marital home, set the list price, and, in accordance with the separation agreement, ordered that the proceeds of the sale be equally divided. The court, citing *Roos* v. *Roos*, 84 Conn. App. 415, 853 A.2d 642, cert. denied, 271 Conn. 936, 861 A.2d 510 (2004), and *Roberts* v. *Roberts*, 32 Conn. App. 465, 629 A.2d 1160 (1993), concluded that it "[did] not have the authority to modify the parties' separation agreement relating to the division of the marital home postjudgment." The court stated: "The separation agreement is clear that the parties evenly share in the proceeds from the sale of the marital home as a 'property settlement.' " Similarly, the court concluded that it "ha[d] no authority to alter the terms of the buyout provision in the separation agreement as the plaintiff requests. . . . The buyout provision allows either party to buy out the other's interest in the marital home by paying 50 percent of the net value of the marital home. There is a specific

process the parties must go through in reaching the net value. Included in that process is the reduction of the fair market value [l]ess the amount of any *outstanding* mortgages or other liens . . . . See Separation Agreement § 5.4 (d). The plaintiff asks the court to alter the language of this provision by allowing her to deduct the value of the mortgages on the marital home as of May, 2010. The clear language of the buyout provision requires the parties to reduce the fair market value of the marital home by any outstanding mortgages, not mortgages that no longer exist." (Citation omitted; emphasis in original; internal quotation marks omitted.)

On December 9, 2019, the plaintiff filed a "postjudgment motion for reargument and reconsideration." In her motion, the plaintiff argued that the court's decision was based on clearly erroneous findings of fact and errors of law. Specifically, the plaintiff asserted that she was asking the court "for orders to *effectuate* the property division and did not seek to modify the property division." (Emphasis in original.) In support thereof, the plaintiff relied on *Schneider* v. *Schneider*, 161 Conn. App. 1, 7, 127 A.3d 298 (2015), a case in which the parties' separation agreement required the defendant to make the mortgage payments for their marital home. When the defendant stopped making those payments, the plaintiff made them on her behalf and filed a motion for an order that the defendant reimburse him for the payments, which the trial court denied. Id., 2, 5. On appeal, this court concluded that the trial court's denial constituted an improper modification of the property distribution order. Id., 3. In the present case, the plaintiff contended in her motion for reargument and reconsideration that *Schneider* stands for the proposition that a request for reimbursements for mortgage payments constitutes an effectuation, not a modification, of a dissolution judgment. On December 17, 2019, the defendant filed an objection to this motion.

On January 6, 2020, the court, *McLaughlin, J.*, heard oral argument on the motion for reargument and reconsideration and, on January 7, 2020, issued an order denying the motion. In that order, the court considered this court's decision in *Schneider* and determined that the case supported its conclusion. The court articulated: "[J]ust as the *Schneider* separation agreement required the defendant to make the mortgage payments for the marital home, the parties' separation agreement [in the present case] requires the plaintiff to make all mortgage payments. The agreement does not provide for any credit to the plaintiff for those payments. The separation agreement provides for the parties to share evenly in the proceeds from the sale of the marital home. Thus, to give the plaintiff a credit for the mortgage payments she was required to make under the separation agreement would alter the percentage distribution of the proceeds from the sale of the marital home. In essence, the defendant would be reimbursing the plaintiff for

payments she was obligated to make. The *Schneider* court found this result an improper transfer of property, postjudgment."

The court reiterated that it "[did] not have the authority to modify a property distribution subsequent to the entry of the final divorce," and stated that, "[f]or the court to now provide the plaintiff with a credit for the payments she was required to make under the separation agreement would be an impermissible modification of the separation agreement." The court noted that "[t]he parties could have agreed to open the judgment and modify the separation agreement before the plaintiff started making the additional principal payments. They did not."

This appeal followed. Additional facts and procedural history will be set forth as necessary.

The plaintiff claims that the court improperly modified the dissolution judgment when it denied her motion for clarification. Specifically, the plaintiff asserts that (1) "[i]n failing to recognize the initial noncompliance of the parties, the . . . court improperly modified the original decree," (2) the "court's denial gave a windfall to the defendant" because of the proceeds he would receive from the sale of the marital home, and (3) the "specific amount of the mortgage liabilities was assigned as part of the property settlement at the time of the dissolution and should be used in calculating the net value upon sale." In response, the defendant contends that the court did not impermissibly modify its property distribution but, instead, properly effectuated the judgment. We agree with the defendant.

We begin by setting forth our standard of review and relevant legal principles. "[C]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. . . . The court's authority to transfer property appurtenant to a dissolution proceeding rests on [General Statutes] § 46b-81. . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage. . . . A court, therefore, does not have the authority to modify the division of property once the dissolution becomes final. . . . Although the court does not have the authority to *modify* a property assignment, a court . . . does have the authority to issue postjudgment orders *effectuating* its judgment." (Emphasis in original; internal quotation marks omitted.) *Schneider* v. *Schneider*, supra, 161 Conn. App. 5–6.

"Under Practice Book [§ 17-4], a civil judgment may be opened or set aside . . . [when] a motion seeking to do so is filed within four months from the date of its rendition. . . . Absent waiver, consent or other submission to jurisdiction, however, a court is without

jurisdiction to modify or correct a judgment, in other than clerical respects, after the expiration of [that four month period] . . . .

"Even beyond the four month time frame set forth in Practice Book § 17-4,[5] however, courts have continuing jurisdiction to fashion a remedy appropriate to the vindication of a prior . . . judgment . . . pursuant to [their] inherent powers . . . . When an ambiguity in the language of a prior judgment has arisen as a result of postjudgment events, therefore, a trial court may, at any time, exercise its continuing jurisdiction to effectuate its prior [judgment] . . . by interpreting [the] ambiguous judgment and entering orders to effectuate the judgment as interpreted . . . . In cases in which execution of the original judgment occurs over a period of years, a motion for clarification is an appropriate procedural vehicle to ensure that the original judgment is properly effectuated. . . .

"Although a trial court may interpret an ambiguous judgment . . . a motion for clarification may not . . . be used to modify or to alter the substantive terms of a prior judgment . . . and we look to the substance of the relief sought by the motion rather than the form to determine whether a motion is properly characterized as one seeking a clarification or a modification. . . .

"In order to determine whether the trial court properly clarified ambiguity in the judgment or impermissibly modified or altered the substantive terms of the judgment, we must first construe the trial court's judgment. It is well established that the construction of a judgment presents a question of law over which we exercise plenary review. . . . In construing a trial court's judgment, [t]he determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . .

"[T]he purpose of a clarification is to take a prior statement, decision or order and make it easier to understand. Motions for clarification, therefore, may be appropriate where there is an ambiguous term in a judgment or decision . . . but, not where the movant's request would cause a substantive change in the existing decision. Moreover, motions for clarification may be made at any time and are grounded in the trial court's equitable authority to protect the integrity of its judgments."[6] (Citation omitted; footnote added; footnote omitted; internal quotation marks omitted.) *Almeida* v. *Almeida*, 190 Conn. App. 760, 765–67, 213 A.3d 28 (2019).[7]

"In order to determine the substance of the trial

court's actions here, we begin by examining the definitions of both alteration and clarification. An alteration is defined as [a] change of a thing from one form or state to another; making a thing different from what it was without destroying its identity. Black's Law Dictionary (4th Ed. 1968) [p. 71]. An alteration is an act done upon the instrument by which its meaning or language is changed. If what is written upon or erased from the instrument has no tendency to produce this result, or to mislead any person, it is not an alteration. Id. Similarly, a modification is defined as [a] change; an alteration or amendment which introduces new element into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. Black's Law Dictionary (6th Ed. 1990) [p. 905].

"Conversely, to clarify something means to free it from confusion. Webster's New World Dictionary of the American Language (2d Ed. 1972) [p. 272]. Thus, the purpose of a clarification is to take a prior statement, decision or order and make it easier to understand." (Internal quotation marks omitted.) *Silver* v. *Silver*, 200 Conn. App. 505, 516, 238 A.3d 823, cert. denied, 335 Conn. 973, 240 A.3d 1055 (2020).

In the present case, the court properly concluded in its memorandum of decision that it did not have the authority to modify the terms of the separation agreement. The court found that, "[i]n or around July, 2012, the plaintiff and the defendant jointly refinanced the mortgage of the marital home to ensure the plaintiff could afford the mortgage payments. . . . Since that time, the plaintiff has continued to live in the home with her children. . . . From 2012 until 2019, the plaintiff made principal payments on the mortgage for the marital home thereby reducing the principal balance by over $170,000."[8] The court stated: "The plaintiff asks the court to enter orders to give her the sole benefit of the increased equity . . . ." The court, citing § 5.4 (c) of the separation agreement, concluded that "[t]he separation agreement is clear that the parties evenly share in the proceeds from the sale of the marital home as a 'property settlement.' " We agree.

Applying the foregoing principles to the present case, we conclude that the court correctly construed the plaintiff's motion for clarification to be an impermissible motion for modification. It is clear from the separation agreement that the parties intended to list the marital home for sale by June 30, 2012, and to equally divide the net proceeds or deficit as a property settlement. The parties, by agreement, deviated from that judgment by not selling the home within the specified period of time, and the plaintiff continued making mortgage payments after the terms of the mortgage reset requiring payments toward its principal. The parties, however, did not alter the terms of the buyout provision of the separation agreement. Section 5.4 (d) of the agreement

clearly states: "If one party buys out the other, it shall be for 50% of the net value, calculated as follows: the *fair market value* as determined by the average of three appraisals or market analyses . . . less the amount of any *outstanding mortgages* or other liens, and less the costs of refinancing said outstanding mortgages and liens. Under any buyout, the terms of a buyout shall include refinancing and satisfying *any then-current joint mortgage(s)*, and a transfer of seller's interest in the Property to the buyer. If within 30 days of commencing said discussions, the parties cannot agree to all the terms of a buyout, then the Marital Home shall be listed for sale pursuant to the terms set forth above." (Emphasis added.) The plaintiff's motion for clarification does not seek to free from confusion the terms of the separation agreement. Rather, it seeks to amend the separation agreement by introducing a new element into the details of the judgment by seeking a ruling that the buyout price be calculated using the mortgages' balances as they were at the time the parties signed the separation agreement or, alternatively, by calculating the price of the buyout as of when the marital home was supposed to be listed for sale in June, 2012. Such amendment would cause a substantial change in the existing judgment and, therefore, is an impermissible modification of the judgment.

In support of her argument that the court modified the original judgment by denying her motion for clarification, the plaintiff again relies on this court's decision in *Schneider* v. *Schneider*, supra, 161 Conn. App. 1. As previously discussed in this opinion, in *Schneider*, the parties entered into a separation agreement that was incorporated into the dissolution judgment. Id., 3. "Under the plain terms of the agreement, the plaintiff would reside in the marital home and the defendant, in lieu of child support, would be responsible for one half of the home's holding costs until . . . the home's sale, or . . . the plaintiff's first court-ordered payment of $10,050 toward their child's college expenses. Once either event occurred, the defendant would become fully responsible for paying the holding costs until the home was sold." (Footnote omitted.) Id. The parties "adhered to the provisions of the agreement and equally split the holding costs." Id., 4. When their child entered college, the plaintiff made the court-ordered payment of college expenses, relieving him of the obligation to pay one half of the home's holding costs. Id. "Nevertheless, the plaintiff and the defendant each continued to pay one half of the mortgage payments for another two and one-half years until the home's eventual sale . . . ." Id. The plaintiff, therefore, paid an additional $51,331.96 toward the household expenses beyond what the judgment required. Id. The defendant conceded that she did not pay the entirety of the holding costs. Id. The plaintiff filed a motion for order seeking reimbursement from the defendant for the additional contributions he

made toward the household expenses, which the trial court denied. Id., 4–5.

On appeal to this court, the plaintiff argued that the trial court's denial of his motion for order impermissibly modified the dissolution judgment. Id., 5. This court agreed and held that, by failing to make the court-ordered payments, the defendant violated the court's order. Id., 7. Moreover, the court held that the "[trial] court's denial, when considered together with the distribution of the proceeds from the sale of the home, resulted in a windfall to the defendant, who was able to avoid paying one half of the holding costs for several years while still receiving the benefit of those payments when she received the sale proceeds." Id., 8. This court concluded that the "practical result of the [trial] court's determination was an additional transfer of property from the plaintiff to the defendant, and, as a result, it constituted an improper modification of the original judgment." Id.

The present case is distinguishable from *Schneider*. Unlike in *Schneider*, the plaintiff in the present case was solely responsible for paying the holding costs of the marital home. Thus, the plaintiff was doing what was required under the terms of the judgment. Further, because the judgment did not require the defendant to make mortgage payments, there is no indication that he violated its terms. Rather, the parties mutually agreed to extend the sale by date so that their children could remain in the marital home and stay in the same school district. In July, 2012, the terms of the existing mortgage changed from requiring payments of interest only to requiring payments of both principal and interest. The separation agreement did not provide for a set off or a credit for those payments. The separation agreement simply states that, "[u]pon the sale of [the] Marital Home, after payment of the taxes, mortgages, conveyance taxes, broker's commission(s), [attorney's] fees, and any other expenses reasonably incident to [the] sale, as a property settlement the remaining proceeds shall be equally divided (50/50) between the parties."

As the plaintiff states in her brief to this court, the parties "mutual[ly] disregard[ed] . . . the court-ordered sale date" and "jointly agreed to go *outside the terms of their agreement* when they *chose to ignore*" that order. (Emphasis added.) The plaintiff cannot now seek to modify the judgment merely because the parties decided that they no longer wanted to list the home for sale by June 30, 2012. The court had the authority to effectuate the existing order, which it did by ordering the sale of the marital home and the equal division of the proceeds in accordance with the terms of the separation agreement. If the defendant receives more money from the sale of the marital home than he would have had the parties sold the home or exercised the buyout provision of the separation agreement in or

around 2012, it is because the plaintiff acquiesced to this possibility by deciding not to sell the home or buy out the defendant at that time.

In her brief to this court, the plaintiff asserts that "neither party expected that the provisions of [§] 5.4 would be applicable some seven years after anticipated performance . . . ." Although it is true that the parties' circumstances changed after they executed the separation agreement, this change resulted from the parties' voluntary actions, which did not include altering the terms of the separation agreement. Accordingly, we conclude that the court did not improperly modify the separation agreement when it denied the plaintiff's postjudgment motion for clarification. Rather, the court effectuated the terms of the existing separation agreement to which the parties previously had agreed.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In her brief to this court, the plaintiff has not distinctly challenged the court's denial of her motion for reargument and reconsideration. In light of the arguments raised in her brief, we consider any challenge with respect to that ruling to be encompassed by her claim of error with respect to the ruling on her motion to clarify.

[2] The parties utilized the services of a private mediator in negotiating the separation agreement and both parties retained separate counsel to review the agreement.

[3] In her motion to clarify, the plaintiff stated that, specifically, her payments "resulted in an extra $175,000 of equity." The dollar amount by which the principal was reduced is not relevant to the plaintiff's claim on appeal.

[4] The plaintiff also filed a motion for contempt, postjudgment, and a motion for order, postjudgment, seeking orders to effectuate the sale of the marital home. On November 5, 2019, the court heard all motions simultaneously and, on November 19, 2019, entered orders related thereto. The plaintiff appeals only from the court's order regarding the motion to clarify.

[5] Practice Book § 17-4 provides in relevant part: "(a) Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court. . . ."

[6] "[I]t is . . . within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Lawrence* v. *Cords*, 165 Conn. App. 473, 484, 139 A.3d 778, cert. denied, 322 Conn. 907, 140 A.3d 221 (2016).

[7] See also *Cunningham* v. *Cunningham*, 204 Conn. App. 366, 374, 254 A.3d 330 (2021) (noting that, in contrast with order that merely effectuates existing judgment, "[a] modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the [subject matter] intact").

[8] In the plaintiff's postjudgment motion for reargument and reconsideration, she argued that the court made a factual error in its November 19, 2019 memorandum of decision in finding that the parties "refinanced" the marital home. Rather, she contended, "the terms of their *existing mortgage* required greater payments toward principal starting in 2012." (Emphasis in original.) In its January 7, 2020 order denying the motion, the court stated: "The parties agree that there was no refinance of the mortgage. Rather, the terms of the mortgage existing at that time required payments toward principal after June 30, 2012. Up until June of 2012, the mortgage required payments of interest only." Nevertheless, the parties acknowledge that the terms of their mortgage changed in June, 2012. Thus, whether the parties "refinanced" the mortgage is not relevant to our resolution of the instant appeal and we consider any error on the part of the court in its original

ruling to be harmless.

————————————————————